[No. 29761.   Department Two.   February 23, 1946.]

GEORGIA STOBERT, *Respondent,* v. ROBERT B. STOBERT, *Appellant.*[1]

[1]Reported in 166 P. (2d) 180.

*Mark M. Litchman,* for appellant.

*B. Gray Warner (Stanley C. Soderland,* of counsel), for respondent.

JEFFERS, J.—On September 28, 1944, Georgia Stobert instituted the present action for divorce against her husband, Robert Stobert, in the superior court for King county. The complaint alleged that the parties were married on June 18, 1937, at Granger, Washington, and that two children have been born as the issue of this marriage, namely, Gary, aged six years, and Robert, aged four years; that the community property consists of the family home at 1509 Sixteenth avenue north, Seattle, of the approximate value of six thousand dollars, against which there is an unpaid balance, the exact amount of which is unknown to plaintiff, household furniture for ten rooms, the greater portion of which was purchased by plaintiff out of her own earnings, of the approximate value of forty-five hundred dollars, one 1939 Packard automobile of the approximate value of one thousand dollars, and war bonds, the exact number and value of which are unknown to plaintiff.

It is further alleged that defendant had treated plaintiff in a cruel and brutal manner, in that on repeated occasions he had struck, beaten, and knocked her down during drunken rages; that on Christmas Eve, 1943, he knocked plaintiff down and kicked her in the face; that defendant had unmercifully beaten their son, Gary; that defendant had participated in extramarital relationships with other women; that on September 16, 1944, defendant ordered plaintiff out of the house, and in the early morning of September 27, 1944, defendant choked plaintiff while in a drunken rage. Other claimed acts of cruelty on the part of defendant were alleged. It is also alleged that defendant was working for the United States army engineers at a salary equaling or in excess of five hundred dollars per month.

Plaintiff prayed that an interlocutory decree of divorce be granted to her; that she be awarded the care, custody, and control of the children, without the right of visitation

on the part of defendant; and that she be awarded most of the community property hereinbefore set out, and in addition two hundred twenty-five dollars per month as alimony for support of herself and the children.

Defendant, by his answer, denied that he had been guilty of any of the acts of cruelty alleged in the complaint; denied that the home located at 1509 Sixteenth avenue north belonged to the community, alleging that on May 4, 1942, plaintiff conveyed to defendant her interest in the home; admitted there was some household furniture, but denied that it had a value in excess of two thousand dollars; denied that plaintiff was a fit and proper person to have the custody and control of the minor children; denied that he was earning five hundred dollars per month.

Defendant, in his affirmative defense and cross-complaint, alleged that the two minor children have been in his care and custody for the past two years, with intermittent assistance by plaintiff; that early in 1942, while defendant was in Alaska in the employ of the government, plaintiff became infatuated with a sailor and, without permission from defendant, rented the home, left the children with her mother in Yakima, sold a considerable portion of the furniture, and made preparation to get a divorce; that defendant returned from Alaska and attempted to persuade plaintiff to cease her associations with the sailor but was unsuccessful; that defendant then went to Yakima and brought the children back to Seattle, establishing a home for them with his brother.

It is further alleged that in May, 1942, plaintiff conveyed her interest in the home to defendant, stating that she was through with him and the children.

It is further alleged that in June of 1942, upon her promise that she would take care of the home and the children and would terminate her relations with the sailor, defendant conditionally condoned her actions, and from June, 1942, until about February, 1943, plaintiff and defendant lived together as man and wife.

It is further alleged that in January, 1943, plaintiff became infatuated with a roomer, and thereafter she left for

Butte, Montana, where she lived with this roomer as man and wife for about two months; that in June, 1943, plaintiff brought a suit for divorce in the superior court for King county and made application to have the children temporarily awarded to her, and that, on July 22, 1943, the court denied her the care and custody of the children, and thereafter plaintiff abandoned the action; that during all of such time defendant had the care and custody of the children.

It is further alleged that in August or September of 1943, plaintiff proposed to defendant what she and he regarded as a business proposition; that she would return to the home upon condition that they would have no sexual relations, that they would have separate rooms, and that she could do as she pleased by way of employment or otherwise; that defendant, for the sake of the children, agreed to this proposition, and for a period of about a year the parties lived together in the same house, occupying separate rooms, and had no sexual relations.

Defendant asked that he be awarded an interlocutory decree of divorce and the care and custody of the children, with the right of visitation on the part of plaintiff.

Plaintiff by her reply denied the affirmative allegations of the answer and cross-complaint.

We have set out at some length the allegations contained in the pleadings, in order that a better understanding of the findings of fact made by the trial court may be had.

The case came on for trial before the court on April 12, 1945, the trial consuming about three days. The greater part of the testimony was given by plaintiff and defendant; in fact, plaintiff's only other witness was her sister, Mrs. Opal Flynn, and defendant's only other witness was Mr. Litchman, his attorney. Much of the testimony of both plaintiff and defendant related to acts of the other party which, it was claimed, occurred in 1942 and 1943. Many of the acts testified to occurred prior to September, 1943, at which time defendant alleged the parties entered into what he describes as a business proposition.

Plaintiff's testimony tended generally to support the allegations of her complaint, and she was corroborated to some extent by Mrs. Flynn, particularly as to some alleged acts of cruelty and as to the allegation that, during the year following September, 1943, when defendant claimed the parties occupied separate rooms and did not live together as man and wife, plaintiff and defendant in fact occupied the same room, in which there was only one bed. Plaintiff admitted leaving the home and going to Butte with the roomer referred to in the answer.

Defendant's testimony tended to establish the allegations of his cross-complaint, and he specifically denied that he had ever been guilty of any cruel conduct toward plaintiff, except that on one or two occasions, acting under great provocation, he had slapped plaintiff.

We are of the opinion no good purpose would be served by further setting out the testimony of the respective parties. It is apparent, we think, from what has been stated, that the testimony was absolutely in conflict in regard to the facts as alleged by the respective parties, except in one or two instances.

In view of this situation, as shown by the record, we are unable to say that the weight of the evidence preponderates against the findings of the trial court, who heard and saw the witnesses, and we therefore accept the findings of fact as the facts in this case, except as to one part of finding No. 6, to which we shall later refer.

We then have the question of whether or not the findings of fact support the conclusions of law and judgment. We quote the findings of fact as made by the trial court:

"1. For more than one year last past, immediately preceding the commencement of this action, both parties have been, and still are, residents of King county, state of Washington.

"2. June 18, 1937 in Yakima, Washington, the parties were married, and they have two children, namely, Gary, age 7 years, and Robert, age 5 years, who have been in the care and custody of the maternal grandparents since October, 1944, by reason of a court order entered herein.

"3. February, 1942 the plaintiff, while the husband was

employed on governmental work in Alaska, sold all the furniture, rented the house, left the children with her parents in Yakima, and made preparations to go to Reno for a divorce. January, 1943, she deserted the defendant and the children, going to Butte, Montana, where she lived for two months, never once seeing or inquiring about the children during said period. That against his will the children were taken by the plaintiff in September, 1944, to her parents in Yakima, and that the children are now there against his will under order of court.

"4. That on May 4, 1942, following the Alaska episode, the wife conveyed by quit claim deed to the husband all her interest in the home for the purpose of obtaining her freedom from him; that again in August of 1943, following denial of her request for the temporary care of the children by the superior court for King county in cause No. 344320, a suit brought by her against him for divorce, she notified both her then counsel and counsel for the defendant that she was through and that he could get the divorce and the property.

"5. That from September, 1943, until September, 1944, the parties resumed marital relations, although each went his separate way, neither accounting to the other for his or her behavior; that during this period the wife was employed in selling jewelry outside of the city and the state, and outside help was employed to look after the children; on a few occasions the defendant drank to excess and struck plaintiff and treated her with great cruelty; that it is impossible for the parties to live together as man and wife.

"6. That neither party to the action has the proper facilities for furnishing a fit and proper home and care for the children in King county at this time, and that therefore they are dependent children.

"7. That the parties have acquired, in addition to the house legally described as Lot 3, Block 2, Capitol Hill Extension Addition to City of Seattle, as in Vol. 10 of Plats, page 76 in the auditor's office of King county, Washington, against which there is a mortgage in the sum of $2,900.00, the following property: An automobile, which requires considerable repairs, valued at about $500.00; household furniture and furnishings, some of which are in the possession of plaintiff wife; a piano valued at $575.00; that the community is indebted to various parties for the furniture and the piano, and to Russell Frost, a brother of the plaintiff wife for money borrowed from him to make a down

payment on the purchase of the home; that the plaintiff has in her possession the sum of $300.00, and the defendant has war bonds of the face value of $200.00."

It will be noticed that in finding No. 5 the court found that between September, 1943, and September, 1944, the parties resumed marital relations, and that, on a few occasions, defendant drank to excess and struck plaintiff and treated her with great cruelty. The court apparently believed the testimony of plaintiff and her sister and accepted that testimony as the basis for such finding.

We desire to call attention to the last part of finding No. 6, which states: "and that therefore they [the minors] are dependent children." We shall later refer to finding No. 6, and especially to the above-quoted portion.

From the foregoing findings of fact the court made the following conclusions of law:

"1. That both parties are entitled to an interlocutory decree of divorce, to be made a final decree of divorce upon motion of either party six months after the filing of said interlocutory decree unless an appeal is taken therefrom.

"2. That the quit claim deed executed by the plaintiff to the defendant on May 4, 1942, should be ratified, and the house should be awarded to the defendant as his sole and separate property.

"3. That the plaintiff is entitled to retain the furniture and furnishings she took from the house in September, 1944; to be awarded the piano free and clear of any indebtedness; the $300.00 she has in her possession, and the further sum of $1,200.00, less the sum of $50.00 heretofore paid by order of the court, which shall be paid by the defendant within 15 months at the legal rate of interest until paid and shall constitute a lien against the property until the entire payment is made.

"4. That the $200.00 in war bonds, the automobile and the furnishings and furniture now located in the said home commonly described as 1509-16th Ave. North, Seattle, shall be awarded to the defendant as his sole and separate property.

"5. That the attorney for the plaintiff is entitled to the sum of $300.00 as attorney's fees, of which has been paid the sum of $200.00 by the plaintiff; that the defendant shall pay the balance, to-wit, the sum of $100.00 to plaintiff's

attorney, and the court costs, and in addition thereto shall pay all of the indebtedness against the furniture and furnishings, including the piano, purchased prior to September, 1944, and he shall also pay the balance due to Russell Frost.

"6. The minor children of the parties, namely, Gary and Robert, shall be dependents of the court and they shall be under the jurisdiction of the juvenile court of the superior court of King county; in the meantime, they shall remain in the care and custody of C. A. Frost, Yakima, Washington until the further order of the juvenile court, and the defendant shall pay the sum of $100.00 per month for their support.

"7. That both parties shall have the right to visit said children at reasonable times."

Judgment was made in accordance with the conclusions, and we quote only the last paragraph of the judgment:

"It is further ordered, adjudged and decreed that the minor children of the parties, namely, Gary, and Robert, age 7 and 5 years respectively, are hereby declared to be dependents of the court, and shall be under the jurisdiction of the juvenile court of the superior court of King county. Until such time as the court shall direct, the children shall remain in the care and custody of C. A. Frost, Yakima, Washington, and the defendant shall pay to the said Frost the sum of $100.00 a month for their support. Both parties to this action shall have the right to visit said children at reasonable times and places."

Defendant has appealed from the judgment entered and makes the following assignments of error: The court erred (1) in decreeing that the two children of the parties were "dependent children," and making them wards of the juvenile court; (2) in finding that appellant was guilty of cruelty to his wife; (3) in refusing to admit appellant's exhibit 5, the letter of the wife to the husband dated May 21, 1942; (4) in refusing to admit evidence of the signing of the order by Judge Long on July 29, 1943, denying the wife temporary custody of the children in the first divorce suit; (5) in finding that there was a condonation of the wife's immoral acts with Bowden, the sailor, and Paul Kreugh, the roomer; (6) in awarding more than half of the community property to the wife; and (7) in refusing to award

to the defendant the care and custody of the children and the greater portion of the property.

We are of the opinion that there is no merit to appellant's assignments of error Nos. 2, 5, 6, and 7, as in our opinion there was testimony in this case which, if believed by the court, justified the court in making the findings upon which the last-mentioned assignments of error are based.

We are also of the opinion the court committed no error in refusing to admit the letter referred to in appellant's assignment of error No. 3. This letter was apparently written by respondent to appellant on May 21, 1942. After it was identified, it was read to the court. At the time the letter was offered, the court asked Mr. Litchman the purpose of the offer, to which Mr. Litchman replied:

"It is to show, as a matter of fact, that she admitted that her relations with this man were not those of a dutiful wife and a mother. THE COURT: With which man? Where does it show any admission of infidelity on her part? MR. LITCHMAN: I don't mean to say that there is any acts there, but it just shows as a matter of fact that she is full of life. She wouldn't admit it right in the letter, but she admits that the break that took place while he was in Alaska was her fault. THE COURT: Let's assume that she admits it is her fault. They had gone back together then? MR. LITCHMAN: Yes. THE COURT: Does that show that she violated any agreement she made when they went back together? That is the question. MR. LITCHMAN: The picture that I want to draw right now is that she made certain statements in a letter. Obviously she isn't going to confess that she had sex relations with a man or had any relations with a man. All we do know up to now is that she was infatuated with a person, and that she wanted to break up the home, sell everything, and get a divorce in Reno. THE COURT: That letter doesn't show it. MR. LITCHMAN: No, but it is part of the general picture. THE COURT: Any objection to that letter? MR. WARNER: Yes. THE COURT: Objection sustained."

The letter referred to was written and apparently received by appellant prior to June, 1942, upon which date, appellant admits that he and respondent resumed the marital relations.

■ The court did not err in refusing to admit in evidence the order signed by Judge Long on July 29, 1943, denying respondent the temporary custody of the children in the first divorce action, which action, as hereinbefore stated, was abandoned after the parties hereto resumed marital relations. The order was of no probative value in the present action.

We now come to the first assignment of error. It will be noticed that the trial court did not find that either of the parties was unfit morally or otherwise to have the custody and control of these two boys, but found (finding No. 6)

" . . . that neither party to this action has the proper facilities for furnishing a fit and proper home and care for the children in King county at this time, *and that therefore they are dependent children.*" (Italics ours.)

From a reading of the testimony in this case and a study of the findings of fact, it is our opinion that finding No. 6, in so far as it referred to appellant, must have had reference only to the situation presented to the court at the time of trial. In other words, it appears from appellant's testimony that he was capable of earning sufficient to support and maintain the minors, and that he had done so and desired to continue doing so. But during the time respondent absented herself from the home, it was necessary to get someone to look after the children while appellant was working. The home which the court awarded to appellant was apparently a reasonably good home, but the only person suggested by appellant at the time of trial who was available to stay in the home and look after the boys was a woman who was rooming there. Respondent, in her testimony, made some derogatory remarks about this woman, and we assume this testimony must have influenced the court in deciding that appellant was not in a position to furnish a proper home and care for the children.

Respondent testified that, unless she was allowed sufficient alimony to support herself and the boys, she would have to work, and that she would have to leave the boys with her father and mother at Yakima.

We desire to say that we have grave doubts that any court would have awarded the care, custody, and control of these minors to respondent, in view of her admitted association with other men and the other testimony and exhibits admitted in this case, as indicated by the findings of fact. However, respondent contends that she loves the boys and desires to have their custody.

We think there is no question but that respondent is a capable woman, and that she could, if and when she realizes the duties and responsibilities of a wife and mother toward her children and the home, give to the boys the care and attention to which they are entitled. It is common knowledge that, in the last few years, a good many women who have become bored with the duties and responsibilities of the home have abandoned their homes and children for the bright lights, and we anticipate that many of them will find they have made a fatal mistake.

We are satisfied that in this case there was no basis for the court's finding that these two boys were dependent children and concluding and adjudicating that they be placed under the jurisdiction of the juvenile court of King county. While it is true the trial court, in a divorce action where there are minor children, should consider of first importance the welfare of the children and to that end the court has a wide discretion in determining who shall have the care, custody, and control of such minors; yet it is our opinion that the statutes relative to divorce contemplate that the trial court retain jurisdiction of the care, custody, and control of minors, to the end that if there be a change of conditions which influenced the court in making the award, the court may modify or change such award when it will be for the best interest of the minors.

As we understand the purported effect of the judgment in this case relative to these minors, the trial court lost control of the minors, and, under the theory they were dependent children, the juvenile court was given complete jurisdiction of them.

We are convinced that before a child can be determined to be dependent, the procedure must be followed as

outlined in Rem. Rev. Stat., § 1987-1 [P. P. C. § 359-1] *et seq.* That procedure contemplates the filing of a petition showing that there is in the county a dependent child. When the petition is filed, a summons is issued. The juvenile act further contemplates a hearing to determine whether or not such child is a dependent child, and § 1987-10 [P. P. C. § 359-19] specifically states that such cases shall not be heard in conjunction with other business of the court.

It is not enough to say that, the instant action being in the superior court, that court had authority to make the disposition of these minors which was made, for Rem. Rev. Stat. (Sup.), § 1987-2 [P. P. C. § 359-3], provides in part as follows:

"In counties containing thirty thousand or more inhabitants, the judges of the superior court *shall,* at such times as they may determine, designate one or more of their number whose duty it shall be to hear *all cases* arising under this act. A special session to be designated as the 'juvenile court session' shall be provided for the hearing of such cases and the findings of the court shall be entered in a book or books kept for the purpose, and known as the 'juvenile record,' and the court may, for convenience, be called the 'juvenile court.' " (Italics ours.)

We conclude that the trial court erred in finding that these two minors were dependent children, and in decreeing them to be dependent children, and placing them under the jurisdiction of the juvenile court.

With the exception of the disposition made of these minors, the judgment of the trial court is affirmed.

In view of the fact that we are of the opinion this case must be remanded to the trial court for the purpose of taking further testimony relative to the custody, care, and control of the minors, we think it not out of place to state that we seriously doubt that the best welfare of these boys would be served by placing them with the parents of respondent at Yakima. We are also of the opinion that the sum of one hundred dollars per month, which the court required appellant to pay for the support of the boys, is excessive, without a further showing than appears in this record.

The judgment as modified will be remanded to the trial court, with instructions to take further testimony only in regard to the care, custody, and control of the minors, and that, after such hearing, the court determine to whom and under what conditions the care, custody, and control of the boys shall be awarded, reserving to the court the right to modify or change such award as the welfare of the minors may require. Neither party will recover costs on this appeal.

BEALS, BLAKE, ROBINSON, and SIMPSON, JJ., concur.