[No. 32085. Department One. April 17, 1952.]

*In the Matter of the Welfare of* JACK DOUGLAS WARREN, *a Minor.*[1]

*Patrick H. Shea,* for relator.

*Mary E. Burrus,* for respondent.

WEAVER, J. █ "The juvenile court does not have jurisdiction over all juveniles, *nor is every child a ward of the court;* its jurisdiction being limited to delinquent or depen-

[1] Reported in 243 P. (2d) 632.

dent children." *In re a Minor,* 39 Wn. (2d) 744, 238 P. (2d) 914. (Italics ours.)

The juvenile court has no jurisdiction over a minor unless it is proved that the minor is either (a) a delinquent, or (b) a dependent child. *In re Miller, ante* p. 319, 242 P. (2d) 1016. The concept that all children are wards of the state, and that the state and its agencies have an *unhampered* right to determine "what is best for the child," is not a recent or an advanced idea. It belongs to a repudiated political and moral philosophy foreign and repugnant to American institutions. Stated more specifically, the mere fact that certain individuals invoke the aid of our courts to litigate the question of who shall have the custody and control of a minor, does not, *ipso facto,* vest our courts with jurisdiction to decide the issues thus presented. The court must first find the child either delinquent or dependent. In *In re Hudson,* 13 Wn. (2d) 673, 126 P. (2d) 765, we said:

"The legislature in clear and definite language provided that no child could be taken from the custody of its parents, unless the court found that the parents were incapable or had failed to provide proper maintenance, training, and education for the child. . . . Courts do not have the right or power to take the custody of children from their parents, unless the parents show that they are unfit to have such custody and the children are treated with cruelty or exposed to immoral or debasing conditions. . . . It is only where a child is neglected or delinquent, and where the parent is responsible for such neglect or delinquency, that a child can be considered a ward of the state and the state has the paramount right to say who shall have the custody and control of the child."

■ Before a child can be determined to be dependent, the procedure outlined in RCW 13.04.010 *et seq.* (Rem. Rev. Stat., § 1987-1 *et seq.*) must be followed. *Stobert v. Stobert,* 24 Wn. (2d) 498, 166 P. (2d) 180.

The minor in the instant case is two and a half years old. There is no question of delinquency. Is he a dependent child?

■ In 1934, Arthur V. Warren and Dorothy Jacobsen, then residing in a jurisdiction recognizing common-law

marriages at that time, openly and mutually agreed to, and did, assume marital duties and obligations such as are usual between persons lawfully married. They thus became husband and wife. They moved to, and have resided in, the state of of Washington since 1941. A marriage valid in the jurisdiction where contracted and consummated, is a valid marriage in the state of Washington. *In re Gallagher's Estate*, 35 Wn. (2d) 512, 213 P. (2d) 621.

Nine children were born to them. Eight of them are now living with Mr. Warren. Jack Douglas Warren was born September 14, 1949. Soon after his birth, his mother became ill. Shortly before her death on November 22, 1949, Jack was taken to the home of his maternal grandmother, where he remained about a week. Mr. Warren was without funds to employ the help necessary to take adequate care of so young a child. The record is not clear just how Jack's custody came to rest with Mr. and Mrs. Salatino, but, since December, 1949, they have cared for, and supported, him. They have no children. Their income is materially larger than that of Mr. Warren. Mrs. Salatino is a sister of Dorothy, Jack's mother.

The testimony is in conflict as to the number of times Mr. Warren attempted to, or did, visit Jack, but there is sufficient evidence to conclude that he did not ignore him.

About four months prior to the hearing on November 14, 1951, Mr. Warren was employed as a metal worker. He has a seven-room house on Bainbridge island, a housekeeper capable of caring for Jack, and an income of four hundred dollars per month. September 15, 1951, he requested the custody of Jack. Mr. and Mrs. Salatino refused. Three days later, they filed a petition in the juvenile court. They asked that Jack be declared a dependent child and placed for adoption, alleged Mr. Warren was not a fit and proper person to have the care, custody, and control of Jack, and prayed that he be deprived of all paternal rights.

The juvenile court found that Jack was "a dependent child within the meaning of the law"; and that Mr. Warren, the father, "has failed to provide support for the said child and has abandoned said child." The court permanently de-

prived the father of all paternal rights; made Jack a ward of the court; placed him in the custody of Mr. and Mrs. Salatino; and restrained the father "from any and all contact with said child."

By appropriate writ, the matter is before us for review.

RCW 13.04.010 and its twenty subdivisions define a "dependent child." Because of his age, that portion of the statute referring to the conduct of the child has no application to Jack. The issue of dependency in this case is narrowed down to an application of sections 6, 8, and 15 of RCW 13.04.010 which define a child as dependent:

"(6) Who has no parent . . . willing to exercise, or capable of exercising, proper parental control; or

"(8) Whose home by reason of neglect, cruelty or the depravity of its parents . . . is an unfit place for such child; or

"(15) Whose father . . . does not provide properly for the child, and it appears that such child is destitute of a suitable home . . ."

■ We cannot balance the material wealth of the Salatinos against that of Mr. Warren. In *In re Fields,* 56 Wash. 259, 105 Pac. 466, we said:

"And in taking into consideration the welfare of the child, it is not proper to consider the material wealth possessed by either the natural or foster parents, or to make comparisons in that regard, for the tendrils of parental affection entwine around the offspring of the poor with as much strength as they do around the children of the rich; if, indeed, with not greater strength by reason ordinarily of more intimate relationships and sacrifices that have to be made and which tend to strengthen mutual love and affection."

■ Poverty of a parent does not of itself make the children dependent children within the meaning of the statute, unless that poverty renders the children destitute of a suitable home.

■ There is no evidence that the home of Mr. Warren is not a suitable home. He was described by Mrs. Salatino as being "affectionate to all of his children." Mrs. Christian, an aunt of Jack's and a sister of Mrs. Salatino, testified that Mr. Warren's care of the other eight children is adequate.

The most eloquent description of Mr. Warren's relationship with his children came from Mrs. Lola Struthers, another aunt of Jack's and a sister of Mrs. Salatino. She testified:

"A. I think he worships his children and I think all his children worship him. I think all of them think there is nobody like their daddy. They seem to have just as much now as when their mother was here, I don't see any difference. Q. In your opinion, to the best of his ability he has been a good father? A. Yes, he's done wonderful with the children. I think he's been a wonderful father. Isn't very many that would do that, I don't think—keep that many children and take care of them like he has."

There is no evidence that the home maintained by Mr. Warren is not a suitable home for Jack. Whether the Salatino home is a suitable one for him is not an issue in this proceeding.

The trial court found that Mr. Warren had abandoned Jack. The evidence does not support this conclusion. It was not unusual or out of the ordinary from normal family relations, upon the death of Jack's mother at a time when the father had neither the finances, nursing experience, nor help to care for his newborn child, that he be cared for by his aunt. There is no criticism of the care given Jack by the Salatinos. It was commendable of them to care for the child, but their so doing, under the facts of this case, gave them no right to his permanent custody and furnished no reason for which the juvenile court could deprive the father of custody.

In *In re Ward*, 39 Wn. (2d) 894, 239 P. (2d) 560, we said:

"This court has not defined abandonment of children, but has decided from the facts in each case whether or not there has been an abandonment."

We quoted from *Penney v. Penney*, 151 Wash. 328, 275 Pac. 710, saying:

"Paternal or maternal rights will not be held to have been abandoned except upon a plain showing to that effect, and that the acts are without justifiable excuse."

There is no plain showing that Mr. Warren intended to, or did, abandon the child. He visited with him on occasions and did nothing indicating an intention to abandon him. We

are convinced from the record that Mr. Warren entertained no such intention, nor did his actions constitute an abandonment. The theory of *In re Ward, supra,* is determinative of this phase of the case.

Since Jack is not a dependent child within the meaning of the law, the juvenile court exceeded its jurisdiction in depriving Mr. Warren of his care, custody, and control. Jack is entitled to the love, affection, and companionship of his father and of his eight brothers and sisters.

The order under review is reversed, with instructions to dismiss the petition upon which it is based.

Schwellenbach, C. J., Mallery, Grady, and Hill, JJ., concur.