[No. 32313. Department One. February 6, 1953.]

*In the Matter of the Welfare of* ALICE SICKLES *et al., Minors.*

THE STATE OF WASHINGTON, *on the Relation of Oren Sickles et al., Plaintiff,* v. THE SUPERIOR COURT FOR COWLITZ COUNTY, *Respondent.*[1]

[1]Reported in 252 P. (2d) 1063.

*Edgar P. Reid,* for relators.

*Joe L. Johnson* and *Arthur H. Reed,* for respondent.

GRADY, C. J.—This proceeding, involving the welfare of Cathy Sickles, a minor, is before this court upon the record of the juvenile department of the superior court for Cowlitz county, certified by that court pursuant to an alternative writ of certiorari.

The record shows that on May 28, 1952, a complaint was filed by the probation officer alleging that the minor children of Oren and Katherine Sickles were dependent, in that their mother beat and abused them in an unreasonable manner, and that Cathy in particular had been badly treated. It was further alleged that it appeared there was danger that permanent harm would be done to the children unless the court intervened.

Upon the filing of the complaint, the court made an order authorizing the probation officer to take the children from the custody of their parents and temporarily place them under the custody of the state department of public welfare. All of the children were returned to the custody of their parents except Cathy. A summons was issued by the clerk of the superior court directed to the parents of the child, fixing a time and place of hearing upon the charges made in the complaint. The summons was served upon the parents by the sheriff of Cowlitz county.

At the time and place designated in the summons, the parents appeared in person and were represented by counsel. A number of witnesses testified. The court made findings of fact to the effect that the mother of Cathy had assaulted her by biting, beating, and bruising her body; that she was undernourished and had not had enough to eat; that the mother had no love and affection for the child, and that her father must have known of the conduct of the mother but had made no effort to protect her from the assaults made. The court adjudged that Cathy Sickles was a dependent

child and by order made her a ward of the court. The order permanently deprived the parents of all parental rights, custody, care, and control of the child, but reserved the right to make such other and further orders as might be needed and necessary in the premises.

The assignments of error relate to procedural steps taken prior to the hearing, absence of notice to relators of the entry of the findings of fact and order, insufficiency of evidence to support a finding of dependency of Cathy Sickles or that she was the victim of assaults and mistreatment by her mother, insufficiency of evidence to warrant a finding that her father had knowledge of or reason to suspect that she had been mistreated by her mother, and that the parents were unfit persons to have custody of their child; also to the conclusion that she was a dependent child. The power of the court to make an order permanently depriving the relators of all parental rights with reference to the child is challenged.

This case presents the usual difficult problem which confronts this court when we are asked to reverse or modify an order of a trial court affecting the welfare of a minor child. The court is necessarily vested with a wide latitude of discretion. The court must be guided by the evidence submitted at the hearing, and the trial judge is in a much better position to determine a question of child welfare than we are when reviewing the printed record. In view of such a situation, we must rely very much upon the findings of fact made by the court.

With the foregoing in mind, we have made a study of the statement of facts. It appears to us that some of the relatives of Mr. Sickles were unfriendly to his wife, and they, with some well-meaning members of the church, concluded that Cathy was being mistreated by her mother. They believed Cathy should be taken to a physician for treatment of a recent cut and abrasion on her face, some bruises on her body, and also treatment for what appeared to be a condition of malnutrition. The child was taken into the home of one of the church leaders and by him caused to be examined by a physician. In the absence of any explanation from the par-

ents of the child, the conclusions reached by the physician prompted the probation officer to institute proceedings in juvenile court to inquire into the question of mistreatment at home. At the two hearings had, the court was confronted with sharply conflicting testimony. Some of the witnesses manifested considerable partisanship. Although the prosecuting attorney appeared and examined witnesses, the probation officer was permitted to participate in the hearing in a role other than that of giving information to the court by way of testimony. It would serve no useful purpose to incorporate in this opinion a summary of the conflicting testimony. It is sufficient to say that, while it does not support the more extreme findings of cruelty made by the court, a situation was developed warranting court intervention and inquiry.

 The order of the court depriving both parents of all parental rights, custody, care and control of their child is without sufficient factual support to justify such a broad order as the court made. The order is based upon the conclusion of the court that the child was a "dependent child" within the provisions of RCW 13.04.010 because of cruel treatment of such child by her mother and knowledge thereof by her father, coupled with no effort by him to protect the child. The record shows that Sickles' employment causes him to be away from home five days each week. There is no direct evidence in the record establishing the fact that he ever observed the commission of the cruel acts of which complaint has been made. The circumstantial evidence is insufficient to support an inference that he knew or should have known that his wife was mistreating the child as claimed and found by the court.

RCW 13.04.010, defining a "dependent child," has twenty subdivisions. The order of the court would indicate that it was based upon subdivision (8), which is as follows:

"(8) Whose home by reason of neglect, cruelty or the depravity of its parents or either of them, or on the part of its guardian, or on the part of the person in whose custody or care it may be, or for any other reason, is an unfit place for such child."

If the findings of fact relating to the conduct of the mother of the child can be accepted, then it would follow that Cathy was a dependent child. This would be because the conduct of the parent made the home an unfit place for her to live. In such case, the juvenile court has the authority to place the child *temporarily* in a suitable institution or home. RCW 13.04.100. The condition of dependency above defined is not such that the court has the power to permanently sever the natural parental relationship between the parents and their child. We are not deciding that such authority is lacking in all conditions of dependency, as such question is not before us.

We cannot conclude from the record that the conduct of the child's mother shows such an inherent trait of character adverse to the child that it cannot be corrected. It must be borne in mind that, during the period of time it is claimed the acts of cruelty took place, the mother was pregnant and later gave birth to twin children. The other children, including Cathy, were of the ages of five, three, two, and one years. One does not have to indulge in conjecture to be able to believe that the mother was in such a condition physically and emotionally that her conduct towards her children might on occasions not have been wholly normal, or for some reason difficult to understand may have been directed to one of the children rather than to the others.

It is our opinion that, upon the findings of fact made by the court, its authority did not extend beyond that which is prescribed by RCW 13.04.100. This statute authorizes the commitment of a dependent child "to some suitable institution, or to the care of some reputable citizen of good moral character, or to the care of some training or industrial school as provided by law, or to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for dependent, neglected or delinquent children." This language is followed by a proviso to the effect that the order of commitment may be temporary or permanent in the discretion of the court and may be revoked or modified as the circumstances of the case may thereafter require. The statute authorizes the court to in-

quire into the ability of the parents to support their child or contribute to its support, and if they are found able so to do, it may enter such order or decree as shall be equitable in the premises. The force of the word "permanent" as used in the statute is somewhat impaired by reason of the authority of the court to revoke or modify the order. The power of the court to deprive parents of parental rights is discussed in *In re Hudson*, 13 Wn. (2d) 673, 126 P. (2d) 765, and cited cases.

The foregoing viewpoint makes it unnecessary to pass upon the right of the father of the child to its custody if it had been made to appear that by reason of the moral character of the mother, or otherwise, she was an unfit person to have or share in the custody of the child.

The judgment of the court permanently depriving relators of all parental rights, custody, care, and control of Cathy Sickles is reversed, and the cause is remanded for such further action relative to her welfare as to the court may seem proper.

No costs will be taxed in this proceeding in this court.

MALLERY and HILL, JJ., concur.

OLSON, J. (concurring in the result)—In so far as the majority opinion turns upon the conclusion that the evidence in the case at bar does not support the order of the juvenile court, I concur and would dispose of the case upon that ground. Discussion or decision of the question of the authority or power of the court to make the order then would become unnecessary. However, if this latter question is to be considered, it should be answered affirmatively.

The juvenile court determined that the child Cathy, born June 11, 1950, is a dependent child. The majority states that this conclusion is supported by the findings of fact and is proper, under the pertinent statute. As a dependent child, she became a ward of the state, and subject to the care, custody, control, and guardianship of the juvenile court. RCW 13.04.020 [*cf.* Rem. Rev. Stat., § 1987-1]. See *In re Warren*, 40 Wn. (2d) 342, 243 P. (2d) 632 (1952); *In re Miller*, 40 Wn. (2d) 319, 242 P. (2d) 1016 (1952), and cases cited.

In the exercise of the jurisdiction lodged in the juvenile court to provide for such a ward, a permanent or a temporary order providing for her custody may be entered. The former type of order, that is, one permanently depriving her parents of her custody, was made in this case, following a determination by the court that neither of her parents are fit or proper persons to have her custody, and that "to continue the custody of this infant with the mother, father, or either of them would be contrary to the permanent well-being of this child." This conclusion, if it were supported by the evidence, would be sufficient to sustain the order. RCW 13.04.140 [*cf.* Rem. Rev. Stat., § 1987-14]; *In re Miller, supra,* and cases cited. Consequently, it cannot be said that the court acted in excess of its power or authority.

Further, there is no indication in the order that its permanent deprivation provision is based upon subd. (8) of RCW 13.04.010, quoted by the majority. This child may have been found to be a dependent child because the facts of this matter come within this statutory provision, but the custody provisions of the order cannot and do not find support in that subsection or in any other subsection of RCW 13.04.010. This statute only declares who are dependent children, and does not define the power or authority of the court to make an order for the dependent child's custody, or determine the prerequisite findings for an order either temporarily or permanently removing the dependent child from its parents' custody.

What the court may do to provide for the custody of such children, having their welfare in mind, is stated in other sections of the statute, including RCW 13.04.100 [*cf.* Rem. Rev. Stat., § 1987-8], and RCW 13.04.140, *supra.* It is only the latter statute which specifies the findings necessary before any dependent child can be taken from the custody of its parents, without their consent. Neither in it nor in any other statute is there a distinction to be observed because of the facts out of which the child's dependency arises. We should make no such distinction by our decision in this case.

SCHWELLENBACH, J., concurs with OLSON, J.