151 P.3d 1060 (2007)
Maria Susana TOSTADO, Respondent,
v.
Sergio TOSTADO, Appellant.
No. 33336-8-II.
Court of Appeals of Washington, Division 2.
February 6, 2007.
*1061 Sergio Tostado (Appearing Pro Se), Lacey, WA, for Appellant.
Maria S. Tostado (Appearing Pro Se), Lakewood, WA, for Respondent.
VAN DEREN, J.
¶ 1 Sergio Tostado appeals the trial court's disposition in a marriage dissolution action instituted by Maria Tostado. He contends that the trial court erred (1) in declining to recognize and enforce the parties' agreed 1999 Mexican dissolution decree, (2) in awarding custody[1] of their minor child to Maria, and (3) in ordering Sergio to pay ongoing and back child support. We hold that the trial court erred in refusing to recognize the validity of the Mexican decree and custody determination and remand to the trial court for entry of findings of fact and conclusions of law based on a valid Mexican decree. We also vacate the trial court's child support orders and its judgment for back child support, subject to further orders of the court.

FACTS[2]
¶ 2 Maria and Sergio married on August 27, 1984, in Jalisco, Mexico. Immediately after the marriage, they moved to the United States. Sergio maintained residences in both Mexico and the United States, and Maria entered the United States representing herself as Sergio's fiancée. On October 15, 1984, they married again in Los Angeles, California, apparently to satisfy immigration officials.
¶ 3 During their marriage, they had two children, Jacqueline and Sergio Jr.,[3] while residing mainly in the United States.[4] On June 30, 1999, they jointly petitioned a Mexican court for a mutual consent divorce in Jalisco, Mexico. The children resided with Maria in Tijuana, Mexico, for nine months before the Mexican divorce petition was filed. In their petition, they agreed that Sergio would have custody of both children and asked the court to grant this relief. Twelve days later, a Mexican family court granted their petition, dissolving their marriage and making Sergio the custodian of the children.
¶ 4 One week after their divorce in Mexico, they returned to Washington and lived together as a family for the next four years *1062 until August, 2003. During this four-year period, they held themselves out as husband and wife. In addition to residing together for periods of time, Sergio used Maria's employer provided marital medical benefits and marital travel benefits.
¶ 5 On February 10, 2004, Maria filed for dissolution of their marriage in Washington. In his response, Sergio asked the court to recognize the Mexican dissolution decree but admitted the court's jurisdiction over the property division. At trial, a guardian ad litem testified that "both of the children had no desire to spend any time with their father unless they initiated the contact . . . because of having to witness what I would consider domestic violence [and] control issues between their father and their mother." Report of Proceedings (RP) at 126. She also stated her belief that Sergio should seek domestic violence treatment.
¶ 6 The court declined to recognize and enforce the Mexican dissolution decree based on the following findings of fact:
An alleged marriage taking place in August of 1984 in Mexico between the parties is not before this court. The October 15, 1984, marriage that took place in Los Angeles, California, is a valid marriage. Further, a Mexican divorce that took place in July 1999 is not and cannot be recognized by this court for the following reasons:
1. The divorce by its own terms did not relate to the valid marriage dated October 15, 1984. It only referenced the alleged marriage that supposedly took place in Mexico in August 1984, which apparently was not acknowledged by the parties, because they were married in California on October 15, 1984. Further, they obtained (that respondent testified about) a tourist visa document that respondent helped procure for petitioner that characterized petitioner as only respondent's fiancee when the parties entered this country and were married in October 1984.
2. Petitioner has suffered a long domestic violence victim history at the hands of the respondent from at least 1995 until the present time. The court finds that the incidents that the petitioner testified of did in fact happen, as she testified and her testimony was credible.
3. This court finds that petitioner was not afforded due process in regards to the Mexican divorce. The divorce petition was filed on June 30, 1999, and the decree was entered just days later on July 12, 1999. The wife was not afforded an opportunity for an attorney to represent her in that divorce action. The husband, to the contrary was represented by a family member. Further, the parties did not treat the divorce as having any effect in the United States. This was in part based on the husband's representations to the wife that the Mexican divorce was invalid in the United States.
4. Both parties resided as husband and wife and held out themselves as being married until they separated in August of 2003. The husband specifically testified that he used the wife's marital medical benefits. . . . The husband further used the wife's marital travel benefits through her employment even later than the time of separation in August of 2003. The husband further admitted to residing during significant periods of time with his wife as a marital community until the separation took place in August 2003.
Clerk's Papers (CP) at 158-59. The court designated Maria as the custodian of Sergio Jr., the only minor child at the time of the dissolution, and entered a child support order requiring Sergio to pay $702.06 per month for both children. It also ordered Sergio to pay back support in the amount of $8,321.65 for the period between March 1, 2004 and April 1, 2005. Finally, it awarded attorney fees in the amount of $1,500 to Maria.
¶ 7 Sergio appeals.

ANALYSIS
I. MEXICAN DISSOLUTION DECREE
¶ 8 Sergio contends that the trial court erred by entering a dissolution decree, a parenting plan that gave custody of the children to Maria, and a child support order requiring him to pay on-going and back child support because the court should have recognized and enforced the Mexican dissolution *1063 decree and custody order. He acknowledges that the trial court could have exercised jurisdiction over a custody modification had Maria filed a proper petition. Maria claims that the court properly exercised jurisdiction because she represented herself as Sergio's fiancée, not as his spouse, when she entered the United States and because they went through a marriage ceremony in California.
¶ 9 We review factual findings under a substantial evidence standard. Davis v. Dep't of Labor & Indus., 94 Wash.2d 119, 123-24, 615 P.2d 1279 (1980). Evidence is substantial if it is sufficient to persuade a fair-minded person. Holland v. Boeing Co., 90 Wash.2d 384, 390-91, 583 P.2d 621 (1978). We review legal determinations de novo. Mt. Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994).
¶ 10 Marriage is a personal, legal status, which is distinguishable "from the rights and privileges that are incidents of a marriage." State v. Rivera, 95 Wash.App. 961, 965, 977 P.2d 1247 (1999) (citing In the Matter of the Estate of Shippy, 37 Wash.App. 164, 168, 678 P.2d 848 (1984)). "A marriage valid in the jurisdiction where contracted and consummated, is a valid marriage in the state of Washington." In the Matter of the Welfare of Warren, 40 Wash.2d 342, 344, 243 P.2d 632 (1952) (citing In re Gallagher's Estate, 35 Wash.2d 512, 213 P.2d 621 (1950)); see also Rivera, 95 Wash.App. at 966, 977 P.2d 1247 (noting that a Mexican marriage is valid in Washington if it is valid in Mexico).
¶ 11 Here, the evidence included valid certified records of Maria and Sergio's Mexican dissolution decree and their mutual consent divorce petition, both of which contain information about their marriage in Jalisco, Mexico, in August 1984. The fact that Maria represented herself as Sergio's fiancée when she entered the United States does not invalidate their valid marriage in Mexico. Thus, substantial evidence does not support the court's finding that only the California marriage was valid.
¶ 12 Moreover, the California marriage did not legally change Sergio and Maria's already-married status. Although repeating their vows apparently satisfied immigration officials, it was a nullity because a marriage in California can only occur between "an unmarried male" and "an unmarried female." CAL. FAM.CODE § 301. Accordingly, their Mexican marriage remained valid and both Mexican and United States courts were required to recognize its validity.
¶ 13 Maria also argues due process violations regarding the Mexican decree because "[she] was subjected to great distress from Sergio and his family to agree to the divorce in Mexico" and because "Sergio testifies that the law firm that was responsible for the Mexican divorce decree is his family's." Br. of Resp't at 7. Her due process argument is neither briefed, nor does it include citations to legal authority, and we therefore do not address those claims. RAP 10.3; State v. Dennison, 115 Wash.2d 609, 629, 801 P.2d 193 (1990) (citing Smith v. King, 106 Wash.2d 443, 722 P.2d 796 (1986)).
¶ 14 Furthermore, even if her argument were reviewable, she does not articulate procedural due process violations capable of invalidating the Mexican decree. The facts are (1) Maria and Sergio petitioned together for a mutual consent divorce in Mexico based on their Mexican marriage; (2) Maria's allegations of a due process violation do not relate to due process concerns; (3) there is no evidence that Maria did not receive proper notice or opportunity to have counsel; and (4) although the Mexican court did not wait 90 days to enter the dissolution decree, as is required in Washington, this procedural requirement does not relate to due process, and Maria has not provided any evidence of or legal citation to the divorce code of Jalisco, Mexico requiring any waiting period for a mutual consent divorce. RAP 10.3(a) (A brief should contain "[t]he argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"); McKee v. Am. Home Prods. Corp., 113 Wash.2d 701, 705, 782 P.2d 1045 (1989) (citing Transamerica Ins. Group v. United Pacific Ins. Co., 92 Wash.2d 21, 28-29, 593 P.2d 156 (1979)).
¶ 15 Moreover, Maria did not assert at trial or on appeal that she acquiesced in the Mexican divorce decree due to any form of *1064 coercion or threat of domestic violence. She states on appeal that "[she] was subjected to great distress from Sergio and his family to agree to the divorce in Mexico." Br. of Resp't at 7. Without more specific allegations, we cannot say that domestic violence influenced her decision to petition the Mexican court for a mutual consent divorce.
¶ 16 Finally, the fact that the parties continued to live together and held themselves out as a married couple in the United States is irrelevant.[5] Even if Maria had a good faith belief that she maintained a valid marriage in the United States after the 1999 Mexican divorce, her belief does not invalidate the Mexican dissolution decree.
¶ 17 Substantial evidence does not support the trial court's conclusion that a valid marriage and a cognizable dissolution did not occur in Mexico. Also, as we discuss below, the factual circumstances surrounding the Mexican dissolution process substantially conformed to the recodified Uniform Child Custody Jurisdiction and Enforcement Act's (UCCJEA) requirements for acknowledging the validity of a foreign jurisdiction's custody determination. Chapter 26.27 RCW.
II. CUSTODY AWARD
¶ 18 The UCCJEA governs whether a court has jurisdiction to make initial custody decisions or to modify a foreign decree. RCW 26.27.011; RCW 26.27.051; RCW 26.27.221. A court's jurisdiction "is a question of law reviewed de novo." In re Marriage of Kastanas, 78 Wash.App. 193, 197, 896 P.2d 726 (1995) (citing Joy v. Kaiser Aluminum & Chem. Corp., 62 Wash.App. 909, 816 P.2d 90 (1991)).
¶ 19 According to the UCCJEA, if an existing foreign custody determination[6] substantially conforms with chapter 26.27 RCW and does not violate human rights, Washington courts must recognize and enforce the foreign decree:
Except as otherwise provided in subsection (3) of this section [foreign country's child custody law violates human rights],[[7]] a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this chapter must be recognized and enforced under Article 3.[8]
RCW 26.27.051(2).
¶ 20 Formerly, Washington courts could "consider our strong public policy favoring the best interests of the child" when determining whether to enforce a foreign custody award. Custody of R., 88 Wash.App. 746, 761, 947 P.2d 745 (1997). Under the UCCJEA as it existed when Custody of R. was decided, we adopted Maryland's approach:
The Maryland courts have formulated the following test for determining whether to enforce foreign custody decrees: An order is presumed to be correct; this presumption shifts to the party contesting the order, who has the burden of proving by a preponderance of the evidence that (1) the *1065 foreign court did not apply the "best interest of the child" standard, or that (2) in making its decision, the foreign court applied a rule of law or evidence or procedure so contrary to public policy as to undermine confidence in the outcome of the trial. Malik v. Malik, 99 Md.App. 521, 638 A.2d 1184 (Ct.Spec.App.1994).
Custody of R, 88 Wash.App. at 761, 947 P.2d 745. In Malik, the court rejected the mother's argument that a foreign paternal preference would automatically violate Maryland's public policy. Malik, 638 A.2d at 1190-91. Instead, the Malik court held that if the foreign court applied the best interests of the child standard, its custody determination would be enforceable despite a paternal preference and remanded to the trial court to determine whether the foreign court applied its law in substantial conformity with Maryland law. Malik, 638 A.2d at 1191.
¶ 21 But our legislature amended the UCCJEA after our decision in Custody of R. to remove our courts' ability to consider the substantive laws of a foreign country when deciding whether to enforce a foreign custody decree or to assume jurisdiction to make our own initial determination.[9] This recodification of the UCCJEA in 2001 removed the "best interest of the child" language because it "tended to create confusion between the jurisdictional issue and the substantive custody determination." Unif. Child Custody Jurisdiction and Enforcement Act, § 201 cmt., 9 U.L.A. 672 (1999).[10]
¶ 22 RCW 26.27.201 (Initial Child Custody Jurisdiction) now provides:
(1) [A] court of this state has jurisdiction to make an initial child custody determination only if:

(a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
(b) A court of another state does not have jurisdiction under (a) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum . . . and:
(i) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
(ii) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
(c) All courts having jurisdiction under (a) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child . . .; or
(d) No court of any other state would have jurisdiction under the criteria specified in (a), (b), or (c) of this subsection.
(2) Subsection (1) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
(3) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.
(Emphases added). Accordingly, Washington courts may no longer disregard a foreign country's exercise of its jurisdiction to make an initial custody order for failure to use the "best interests of the child" standard, absent a finding that the foreign country's child custody law violates human rights principles. RCW 26.27.030(1)(b) (1979).
*1066 ¶ 23 Here, the Washington trial court, based on "the children's best interests," ordered an initial parenting plan after declining to recognize Mexico's jurisdiction over the parties and the children in the 1999 dissolution decree. But the Mexican court properly exercised its initial jurisdiction and made the custody determination according to its substantive and procedural laws. Thus, by confusing the jurisdictional standard with the substantive custody determination standards, the Washington trial court erred in refusing to acknowledge the Mexican custody order and in making an initial custody determination under the UCCJEA.
¶ 24 Sergio admits that "[u]nder RCW 26.27.2[2]1,[[11]] made applicable to the Mexican order by RCW 26.27.051(1), the Washington court would have jurisdiction to modify a custody determination, but the trial court . . . did not apply the modification standard." Br. of Appellant at 16. According to the UCCJEA Article 2,
[A] court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under RCW 26.27.201(1)(a) or (b) and:
(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under RCW 26.27.211 or that a court of this state would be a more convenient forum under RCW 26.27.261; or
(2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.
RCW 26.27.221. "A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying Articles 1 [General Provisions] and 2 [Jurisdiction]." RCW 26.27.051(1). "`Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." RCW 26.27.021(7).
¶ 25 Because Maria and Sergio and their two children resided in Washington for more than six consecutive months immediately before Maria filed for dissolution, Washington was Sergio Jr.'s "home state . . . before the commencement of the proceeding," satisfying RCW 26.27.201(1)(a). Thus, Sergio is correct that the trial court had jurisdiction to modify the Mexican custody award under the UCCJEA, but Maria failed to request such a modification.
¶ 26 Consequently, we vacate the trial court's order denying the validity of the Mexican decree, vacate its custody and child support orders because it lacked jurisdiction to make an initial custody determination, and remand to the trial court for reconsideration and entry of findings of fact and conclusions of law based on a valid Mexican divorce decree and custody determination.
I concur: HOUGHTON, C.J.
QUINN-BRINTNALL, J. (concurring in the result).
¶ 27 In my opinion, the trial court erred as a matter of law when it summarily declared that, in light of the later California wedding, the Mexican divorce decree had no legal effect. See In re the Welfare of Warren, 40 Wash.2d 342, 344, 243 P.2d 632 (1952) (holding that Washington courts must recognize valid marriages from other jurisdictions). But I would remand so that the trial court could determine whether Maria Tostado was coerced into agreeing to the Mexican divorce, particularly given her claim that she was not represented by independent counsel. The trial court did not address coercion because it ruled preemptively on the decree's legal effect. For this reason, the record does not contain the evidence required to fairly consider this issue. Thus, I would refrain from addressing whether Maria was afforded adequate protection of her rights in the Mexican court.
¶ 28 My decision to concur separately makes this a non-unanimous decision, which we typically publish. State v. Fitzpatrick, 5 Wash.App. 661, 669, 491 P.2d 262 (1971), review denied, 80 Wash.2d 1003 (1972). Although *1067 I recognize the ironic result, I also disagree with the majority's decision to publish this case because it is unique, fact-based, and decided without the benefit of oral argument.
NOTES
[1] We use the term "custody" because the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) uses that term when referring to determinations of the appropriate residential schedule or parenting plan for minor children and the issue involves a foreign jurisdiction. Chapter 26.27 RCW. Washington ceased its use of the term "custody" upon adoption of the Parenting Act of 1987, 1987 Wash. Sess.2015, recognizing that use of the term "custody" is inappropriate between parents who share in the upbringing of their children even though the parents do not live together. In the Matter of the Marriage of Kovacs, 121 Wash.2d 795, 800-01, 854 P.2d 629 (1993).
[2] Both Sergio and Maria are pro se on appeal.
[3] Jacqueline was 18 and Sergio Jr. 15 in April 2005.
[4] They have resided mainly in Washington since 1986.
[5] Maria and Sergio's cohabitation may have constituted a meretricious relationship. "A meretricious relationship is a stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." Connell v. Francisco, 127 Wash.2d 339, 346, 898 P.2d 831 (1995). But whether they had a meretricious relationship in Washington is irrelevant to due process. Further, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) does not require a marriage or a marriage-like relationship for its application. See RCW 26.27.021.
[6] Under RCW 26.27.021(3),

"Child custody determination" means a judgment, decree, parenting plan, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.
[7] Here, there is no claim or finding that Mexican child custody law violates human rights principles.
[8] Article 3 of the UCCJEA provides:

A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this chapter or the determination was made under factual circumstances meeting the jurisdictional standards of this chapter and the determination has not been modified in accordance with this chapter.
RCW 26.27.421(1).
[9] Under former RCW 26.27.030(1)(b) (1979), Washington courts could exercise jurisdiction to make an initial custody determination if:

It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents . . . have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.
[10] The official comments to the UCCJEA explain, "The UCCJEA eliminates the term `best interests' in order to clearly distinguish between the jurisdictional standards and the substantive standards relating to custody and visitation of children." 9 U.L.A. 652.
[11] Sergio erroneously refers to RCW 26.27.211 in his brief.