# IN THE COURT OF APPEALS OF IOWA

No. 19-1670
Filed July 1, 2020

IN RE THE MARRIAGE OF UBALDO DEL REAL
AND GREGORIA DEL REAL

Upon the Petition of
**UBALDO DEL REAL,**
        Petitioner-Appellant,

**And Concerning**
**GREGORIA DEL REAL,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Sioux County, Zachary Hindman,

Judge.


        Ubaldo Del Real appeals from the decree dissolving his marriage to

Gregoria Del Real.  **AFFIRMED AS MODIFIED.**



        Jenny L. Winterfeld of Winterfeld Law, P.L.C., Sioux Center, for appellant.

        Teresa A. O'Brien, Sioux City, for appellee.



        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

Ubaldo and Gregoria Del Real married in 1999 and divorced in 2019. They have four children, two of whom were minors at the time of trial. The parents stipulated to a split physical care arrangement and agreed visitation was not an issue. Following trial, the district court approved the stipulation. The court declined to impute income to Gregoria and concluded Ubaldo should pay Gregoria child support of $757.00 per month for the youngest child. The court divided the marital property and ordered Ubaldo to make a property-equalization payment of $64,590.73.

On appeal, Ubaldo contends the court (1) failed to "imput[e] minimum wage to Gregoria for child support purposes" and should have deviated from the child support guidelines based on differences in the cost of living and (2) acted inequitably by not giving him "a greater portion of the marital equity."

## I.    *Child Support*

### A.    *Jurisdiction*

We begin our analysis with a jurisdictional issue raised on our own motion. *See In re J.M.*, 832 N.W.2d 713, 719 (Iowa Ct. App. 2013) ("On appeal, we may, and should, examine the grounds for subject matter jurisdiction even though the parties have not."). A provision of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) provides "the exclusive jurisdictional basis for making a child-custody determination by a court of this state." Iowa Code § 598B.201(2) (2018). Because the provision implicates the district court's subject matter jurisdiction, it may not be waived by consent or by failure to address or prove it. *J.M.*, 832 N.W.2d at 719. The jurisdictional provision states:

1. Except as otherwise provided in section 598B.204, a court of this state has jurisdiction to make an initial child-custody determination only if any of the following applies:

    a. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

    b. A court of another state does not have jurisdiction under paragraph "a", or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 598B.207 or 598B.208 and both of the following apply:

      (1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

      (2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

    c. All courts having jurisdiction under paragraph "a" or "b" have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 598B.207 or 598B.208.

    d. No court of any other state would have jurisdiction under the criteria specified in paragraph "a", "b", or "c".

*Id.* § 598B.201(1).[1]

Section 598B.201(1)(a) provides for "home state" jurisdiction. The UCCJEA defines "home state" as "the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." *Id.* § 598B.102(7). "Child-custody proceeding" is defined as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." *Id.* § 598B.102(4). The term

---

[1] The exception in section 598B.204 provides for "temporary emergency jurisdiction" over a child who is "present in this state" and has "been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." *Id.* § 598B.204(1). The exception does not apply here.

includes "a proceeding for dissolution of marriage . . . in which the issue may appear." *Id.*

Ubaldo and Gregoria married in Iowa, and both parents initially lived in the state with their four children. In time, Gregoria went to Mexico. She and the youngest child lived there for more than twelve years. They continued to live there at the time Ubaldo filed the dissolution petition.

Gregoria retained Iowa counsel to represent her in the dissolution proceedings and accepted service of the petition, thereby resolving any personal jurisdiction concerns. *See In re Guardianship & Conservatorship of Cerven*, 334 N.W.2d 337, 339 (Iowa Ct. App. 1983) ("Personal jurisdiction may be conferred upon the court by the consent of the parties. Consent may take the form of a general appearance and participation in the proceedings."). But, because the youngest child had not lived with a parent in Iowa for at least six consecutive months preceding the filing of the dissolution petition as required by section 598B.201(1)(a), Iowa was not the youngest child's home state. *Cf. In re Guardianship of Deal-Burch*, 759 N.W.2d 341, 344 (Iowa Ct. App. 2008) ("The child had lived the required time in Iowa so it is her home state and there is no evidence in the record to support a finding that another state is her home state and therefore no court of any other state would have jurisdiction at this time."). Accordingly, Iowa did not have "home state" jurisdiction over the youngest child.

Section 598B.201(1)(b) provides an alternate jurisdictional hook. Under the first prong of the provision, "a court of another state" must not have home state jurisdiction. "State" is defined as "a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular

possession subject to the jurisdiction of the United States." Iowa Code § 598B.102(15). The UCCJEA further provides that "[a] court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this article and article II." *Id.* § 598B.105(1); *see In re Makhlouf*, No. 04-0906, 2005 WL 159159, at *3 (Iowa Ct. App. Jan. 26, 2005) ("[T]he country of Jordan is treated by this law the same as a state of the United States."); *see also Griffen v. State*, 767 N.W.2d 633, 636 n.3 (Iowa 2009) (citing section 598B.105(1) in support of the proposition that the legislature has drafted statutes expressly applying to foreign countries).

No "state" as defined in section 598B.102(15) was the youngest child's "home state." The country of Mexico was her home state. *See Chafin v. Chafin*, 101 So. 3d 234, 238 (Ala. Civ. App. 2012) (concluding Scotland, rather than Alabama, was the child's home state); *Fuller v. Fulle*r, 93 So. 3d 961, 966 (Ala. Civ. App. 2012) (concluding Canada, not Alabama, was the child's home state and "the trial court in Alabama lacked subject-matter jurisdiction to make an initial child custody determination"); *Seekins v. Hamm*, 129 A.3d 940, 943 (Me. 2015) ("Guatemala—not Maine—is the child's home state based on the child's actual place of residence."); *Pilkington v. Pilkington*, 149 A.3d 661, 676 (Md. Ct. Spec. App. 2016) ("[T]he Maryland UCCJEA required the circuit court to treat Germany as if it were a state for the purposes of determining home state jurisdiction."); *Ramamoorthi v. Ramamoorthi*, 918 N.W.2d 191, 198 (Mich. Ct. App. 2018) ("Because the children had lived in India 'for at least 6 consecutive months immediately before the commencement of [the] child-custody proceeding,' India, and not Michigan, qualified as the children's home state . . . ." (citation omitted)).

Because we are required to treat Mexico as a state, we conclude the first prong of section 598.201(1)(b)—stating "a court of another state does not have jurisdiction under paragraph 'a' [home state jurisdiction]"—is not satisfied.

The second prong of section 598B.201(1)(b) requires a showing that "a court of the home state of the child has declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child." The record contains nothing to indicate that a court in Mexico declined to exercise jurisdiction. *See Seekins*, 129 A.3d at 943 ("There is no evidence that Guatemala has declined jurisdiction; thus, the initial proceeding with respect to the child must be pursued there."). Indeed, Ubaldo alleged in his petition that "[n]o separate action for dissolution of marriage has been commenced by [him], and no such action is pending in any court in this state or elsewhere." Gregoria admitted the allegation. Accordingly, the second prong of section 598B.201(1)(b) was not satisfied.[2]

We conclude the district court lacked subject matter jurisdiction to make a child custody determination involving the youngest child. Although Ubaldo has not challenged the custody determination, our conclusion that the court lacked subject matter jurisdiction requires modification of those portions of the dissolution decree approving the parents' stipulation as to the youngest child and granting Gregoria "sole legal custody and primary physical care of" that child.

---

[2] The two remaining jurisdictional provisions are inapplicable. *See* Iowa Code § 598B.201(1)(c) ("All courts having jurisdiction under paragraph 'a' or 'b' have declined to exercise jurisdiction . . . ."), (d) ("No court of any other state would have jurisdiction . . . .").

We now turn to the question at the heart of this appeal—whether we may decide the child support issue raised by Ubaldo. One might intuit that if a court cannot determine who should have custody of a child, the court also cannot determine who should pay support for the child. Here, intuition and law diverge.

We begin with the definition of "child custody proceeding" in the UCCJEA. That definition does not include "child support." *See* Iowa Code § 598B.102(4). Additionally, the definition of "child custody determination" excludes "an order relating to child support or other monetary obligation of an individual." *Id.* § 598B.102(3); *cf. Tostado v. Tostado*, 151 P.3d 1060, 1064 n.6 (Wash. Ct. App. 2007) (noting that under the Washington statute a "[c]hild custody determination" "does not include an order relating to child support or other monetary obligation of an individual" (quoting Wash. Rev. Code § 26.27.021(3))).

Next, we examine the Uniform Interstate Family Support Act. *See* Iowa Code ch. 252K. The Act requires application of its provisions to support proceedings involving a "child residing in a foreign country." *Id.* § 252K.105(1)(c). The Act also provides several bases for exercise of "personal jurisdiction over a nonresident," including consent. *Id.* § 252K.201(1)(b). Finally, section 252K.401 authorizes the establishment of a support order "[i]f a support order entitled to recognition under this chapter has not been issued," and "[t]he individual seeking the order resides outside this state." *Id.* § 252K.401(1)(a). Based on these provisions, we conclude the district court had subject matter jurisdiction to make a child support determination as to the youngest child. *See Fuller*, 93 So. 3d at 967; *see also Chafin*, 101 So. 3d at 237 (concluding the trial court "had jurisdiction to divorce the parties" and "erred in dismissing the divorce action in its entirety" for

lack of subject matter jurisdiction under the UCCJEA); *Ramamoorthi*, 918 N.W.2d at 196 ("[T]he fact that the trial court lacked jurisdiction to make a custody determination did not prevent the trial court from entering an otherwise valid divorce judgment concerning noncustody matters."). Because the district court had subject matter jurisdiction, so do we.

### B. Imputation of Income to Gregoria

Per Gregoria's request, the district court calculated child support using the Iowa child support guidelines and, as noted, ordered Ubaldo to pay Gregoria $757.00 per month for the youngest child. The court also ordered cash medical support of $208.14 per month. Ubaldo contends the district court should have imputed income of "at least minimum wage" to Gregoria in calculating his child support obligation.

Iowa Court Rule 9.11(4) allows a court to impute income to a parent who "is voluntarily unemployed or underemployed without just cause." The district court described Gregoria's physical ailments and credited Gregoria's testimony that she was "presently unable to work in any manner whatsoever." Based on her "history of working very hard for little money," the court further found that, "if Gregoria were able to work, she would do so."

The court's findings are fully supported by Gregoria's telephone testimony. On our de novo review, we conclude the district court acted equitably in declining to impute income to Gregoria in calculating child support. We affirm the child support provisions of the dissolution decree in their entirety.

### C. Deviation from the Guidelines–Cost of Living

Ubaldo contends the district court should have deviated from the child support guidelines based on the "significantly higher" cost of living in Sioux County, Iowa "than the cost of living in Mexico." *See* Iowa Ct. R. 9.11(1), (2). He also seeks an elimination of the cash medical support award because "the cost of health care is much different than that in the United States."

The district court declined to grant a variance, finding no "authority . . . for the proposition that under the present child-support-guidelines regime, a child's entitlement to support from one of the child's parents varies depending on the cost of living in the place where the child resides." And, in any event, the court stated:

> [T]he fact that [the child] has lived a less materially comfortable life in Mexico during the parties' marriage than she would have had Ubaldo been supporting her in an amount consistent with the child support guidelines does not support a conclusion that [the child] should be required to live such a life in the future.

Ubaldo now cites authority in support of his deviation request. *See State ex rel. A.K*, 72 P.3d 402, 405 (Colo. App. 2003). In *A.K.*, the court considered a father's request to deviate from the Colorado child support guidelines based on the dissimilarity of economic circumstances in Russia, where the mother and children lived. *Id.* at 404–05. The appellate court agreed with the father that the trial court "should have considered the evidence" of the children's total living expenses in Russia and the fact that the father provided a fully-paid residence for the children. *Id.* at 405.

*A.K.* is on point. But other courts have gone a different way. *See Gladis v. Gladisova*, 856 A.2d 703, 711 (Md. 2004) ("Although we recognize that the state courts addressing the issue have conflicting views on the subject, we believe that

the better position is to prohibit courts from deviating from the Guidelines based on the standards of living in different areas."); *Teran v. Rittley*, 882 N.W.2d. 181, 193 (Mich. Ct. App. 2015) (finding no intent "to permit geographic variations in the costs of living to justify deviating from the [guideline-] recommended child support amount"). We need not resolve the issue. *Cf. In re Marriage of Ramundo*, No. 18-0911, 2019 WL 2150808, at *1 (Iowa Ct. App. May 15, 2019) (noting the district court made an "upward deviation" in child support based on the mother's move from Iowa to upstate New York where "the cost of living" was "substantially higher"); *In re Marriage of Ginger*, No. 13-1908, 2014 WL 5478145, at *3 (Iowa Ct. App. Oct. 29, 2014) (noting that, other than the obligor's testimony that the State to which he moved had a higher cost of living, there was no support in the record for a downward deviation in the child support guidelines). Although there was anecdotal evidence to suggest the cost of living in Mexico differed from the cost of living in Sioux County, Ubaldo presented scant economic data to support his differential-cost-of-living claim. *See A.K.*, 72 P.3d at 405 ("Given the complexity of comparing the economic circumstances in Colorado to those in Russia, expert testimony would have been useful."). We affirm the district court's decision to not deviate from the guidelines on this basis.

## II. *Property Distribution*

The district court distributed the parties' property as requested by Ubaldo but required him to make a property equalization payment of $64,590.73, payable in $1000.00 per month installments for sixty-four months, with the last month's payment being $590.73. Ubaldo contends, "Based upon the length of separation

and economical differences between the parties, [he] should have received a greater portion of the marital estate."

The district court addressed and rejected Ubaldo's contention. Pertinently, the court found "Gregoria's account of the circumstances of her departure from the United States, and of the events since that time, [is] much more credible than Ubaldo's." Although Gregoria testified by telephone, the court did not base the credibility finding on her demeanor but on a comparison of the parents' narratives. The court found that, contrary to Ubaldo's testimony, "the parties continued to consider themselves married and not separated until approximately December 2017." We give weight to the court's credibility finding. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423–24 (Iowa 1984) (citing the trial court's unique ability to assess credibility).

The court also determined the parties' respective contributions did not justify treating them differently for purposes of the property division. The court cited the fact that Gregoria "cared for all, and then some, of the parties' children" for "a number of years" at a lower standard of living than Ubaldo enjoyed in the United States, a circumstance that allowed Ubaldo to earn American wages and pay down "a substantial part of the debt owed" on the parties' former home and Ubaldo's current home. The court also cited the "fortuitous appreciation" of the parties' former home in Iowa and the inequity of allowing Ubaldo to "be the primary financial beneficiary" of that appreciation.

The court's findings are fully supported by the record. On our de novo review, we conclude the district court equitably divided the property. We affirm the property division portion of the decree in its entirety.

***III.    Disposition***

We affirm all provisions of the dissolution decree except the provisions approving the parents' stipulation concerning custody of the youngest child and ordering custody of the youngest child to be placed with Gregoria.  We modify the court's findings of fact, conclusions of law, and judgment to delete paragraph three of the order on page thirty-nine of the decree and to delete any language in the findings and conclusions adjudicating custody of the youngest child.

**AFFIRMED AS MODIFIED.**