[No. 21565-9-II.   Division Two.   November 14, 1997.]

*In the Matter of the Custody of* R.

DATO PADUKA NOORDIN, *Respondent*, v. DATIN LAILA ABDULLA, *Appellant*.

*Theodore C. Rogge* of *Geoffrey C. Cross, P.S., Inc.*, for appellant.

*Robert E. Prince* of *Prince, Kelley, Marshall & Coombs, P.S.*, for respondent.

HUNT, J. — Datin Laila Abdulla (Ms. Abdulla) appeals

an emergency habeas corpus order granting custody of her son, R., to his father, Dato Paduka Noordin (Mr. Noordin), based on a prior custody decree of the Muslim Shari'a Court of the Philippines. The trial court denied Ms. Abdulla's request for a continuance to obtain a certified copy[1] of an order of the Philippine Regional Court for Pasig City (the Regional Court), a suburb of Manila, which held that the Shari'a Court lacked jurisdiction.

We reverse and remand.

## FACTS[2]

## I

### MARRIAGE — PHILIPPINES AND BRITISH COLUMBIA

Mr. Noordin and Ms. Abdulla each seek custody of their son, R., born out of wedlock[3] on July 10, 1987, in the Philippines. Mr. Noordin is a national of the Independent State of Brunei, located on the Island of Borneo. Ms. Abdulla is apparently a national of the Philippines. They were married under Muslim rites on November 28-29, 1988, in Majlis Ugama Islam Sabah, Malaysia. After their marriage they apparently lived in Brunei and then, in the early 1990's, moved to Victoria, British Columbia, where they remarried in a civil ceremony on June 2, 1992. A year or so later, they returned to Pasig City, Manila, Philippines.

## II

### ANNULMENT PETITION — PHILIPPINE REGIONAL COURT

By June 1995, the marriage had deteriorated. The parties separated on July 2, 1995, on which date Mr. Noordin

---

[1]Because Ms. Abdulla had less than 24 hours notice of the emergency hearing, she had presented only uncertified copies of the Philippine court orders.

[2]The facts herein recited are gleaned from the scant record, the parties' briefs and their appendices.

[3]That R. was born more than one year before his parents' marriage is significant under Muslim law, which apparently establishes legitimacy only if the child is conceived during marriage or born no earlier than six months following consummation of marriage. See OFFICIAL GAZETTE, Republic of Philippines, Vol. 73, No. 20, *Philippine Presidential Decree No. 1083*, Ch. 3 Tit. III, Art. 58-59 (1997).

assaulted Ms. Abdulla. He threatened to take R., telling Ms. Abdulla's family that they would never see him again. Alleging emotional and physical abuse, on June 30, 1995, Ms. Abdulla filed a petition in the Pasig City Regional Court, located in Manila, for annulment of the marriage and for custody of R. Mr. Noordin claims that he was not served with notice of the annulment action, but acknowledges that his attorney was notified.

### III

#### Subsequent Divorce — Muslim Shari'a Court

Four days later, on July 4, 1995, Mr. Noordin flew to the Island of Denowel, outside Manila, and filed for a divorce by "talaq"[4] in the Muslim Shari'a Court in Cotabato City. Ms. Abdulla was allegedly served with notice on July 6. During this time both parties and their son were still living in Pasig City, Manila.

Three weeks later, on July 27, 1995, the Shari'a Court, proceeding without Ms. Abdulla and R., granted Mr. Noordin's petition for divorce and full custody of R. In the court order, the Shari'a Court stated:

> After a judicious evaluation of the petitioner [Mr. Noordin] and the evidence adduced by the Petitioner ex-parte, this Court finds the Petitioner's Notice of Talaq dated July 4, 1995 as meritorious and in order, and in accordance with the General Principle of Islamic law.
>
> On this point, the Holy Qur'an says:
>
> > "Do divorce woman at their prescribed period"
>
> The anxillary [sic] petition for custody of a minor child is also granted.
>
> > "In Islamic Jurisprudence, when one of the spouses

---

[4]Under the Shari'a Muslim law, a man may effectuate a divorce under "talaq," which is defined as "repudiation of the wife by the husband."

turn into a 'murtad'[5] the custody of their child/children is awarded to the innocent spouse, and if both are guilty of turning into a 'murtad' the state shall determined custody of the same."

WHEREFORE, in the light of the foregoing, and considering the nature of Talaq as non-adversarial, the same is hereby approved . . . .

## IV

### PHILIPPINE REGIONAL COURT RULED MUSLIM SHARI'A COURT LACKED JURISDICTION

Meanwhile, the annulment[6] and custody proceeding initiated by Ms. Abdulla in the Regional Court of Pasig City was still pending. Mr. Noordin filed a motion to dismiss the Regional Court action on grounds that the Muslim Shari'a Court had jurisdiction. On August 18, 1995, the Regional Court of the Philippines in Pasig City granted Ms. Abdulla temporary custody of R. pending resolution of Mr. Noordin's motion to dismiss. On August 29, 1995, the Regional Court denied Mr. Noordin's motion and concluded that the Regional Court, not the Muslim Shari'a Court, had jurisdiction.

On December 19, 1995, the Regional Court denied Mr. Noordin's motion for reconsideration:

The motion is denied. Presidential Decree No. 1083 [recognizing Muslim Court Authority] does not preclude Muslims from resorting to remedies available in ordinary courts like the Regional Trial Courts as in the case of the parties here who are residents of Pasig City, a place where there is no Shari'a Court. Being so, when the petition was filed on June 30, 1995, this Court acquired jurisdiction over the case to the exclusion of other courts including the Shari'a Circuit Court, Shari'a

[5]"Murtad" is an apostasy to Islam. The court's finding that Ms. Abdulla had committed murtad is apparently based on Mr. Noordin's allegations that Ms. Abdulla practiced the Catholic faith and had R. baptized.

[6]The Philippines apparently do not recognize divorce of a Philippine national, especially one who is Catholic.

district, Maganoy, Miguindanao, where respondent filed another petition on July 4, 1995.

The Philippine Court of Appeals denied Mr. Noordin's request for review of the Regional Court's order.

The Regional Court apparently gave custody to Ms. Abdulla pending final determination of the case, and allowed her to remove R. from the Philippines.[7]

## V

### PIERCE COUNTY SUPERIOR COURT

Without informing Mr. Noordin, Ms. Abdulla and R. left the Philippines and moved to the United States in late 1995. Ms. Abdulla has since remarried and enrolled R. in school in the State of Washington.

On September 24, 1996, Ms. Abdulla obtained a temporary order for protection in Pierce County Superior Court, restraining Mr. Noordin from having any contact with his son. Mr. Noordin did not know the whereabouts of R. or his mother until October 8, 1996, when he received a report from Interpol.

On Friday, January 24, 1997, Mr. Noordin filed a petition for a writ of habeas corpus, asking that custody of his minor son be restored to him in accordance with the Muslim Shari'a Court order. On that date a Pierce County court commissioner entered an order granting temporary custody of R. to Mr. Noordin, pending an emergency hearing scheduled for Monday, January 27, 1997, at 11:00 A.M.. Later that same day, the court commissioner reversed

---

[7]A January 30, 1997, telefax from Wilhelmina Joven, Ms. Abdulla's counsel in the Philippines, explains:

the custody of the minor may have been considered to have been awarded to Datin Laila (Ms. Abdulla) due to the Order of the Court dated July 17, 1995[,] ordering a hold departure order of the child without prior court approval . . . . This motion was filed because Dato Noordin was then trying to kidnap the child and was attempting to bring him out of the country.

The Pasig Court however allowed Datin Laila to bring the child out of the country subsequent thereto.

his order sua sponte and returned R. to the custody of Ms. Abdulla pending the hearing.

The following Monday, the parties appeared before Pierce County Superior Court Judge Nile Aubrey. At this emergency hearing, Ms. Abdulla's attorney asserted that the Muslim court did not have jurisdiction over the parties because Ms. Abdulla had filed suit first in the Regional Court of Pasig City. The trial court initially tried to determine which of the two foreign court actions had priority, looking both at which action was commenced first and whether there had been valid service. It asked whether Ms. Abdulla's attorney had certified copies of any court orders. Because in the Philippines it was then 2:00 A.M. the following day, and because he had had only hours to prepare for the emergency hearing, Ms. Abdulla's attorney requested additional time to obtain certified copies of the orders issued by the Regional Court.

As an offer of proof, Ms. Abdulla's attorney asked the court to examine uncertified copies of documents from the Regional Court:

> [COUNSEL]: I would note from a couple of documents I will hand up, there is an issue concerning the jurisdiction of this Muslim court to enter the decree.

> THE COURT: I don't entertain motions as far as jurisdiction. That will have been determined by the court there and not here. You know, this is entitled to the same full faith and credit as a decree from Alaska or Tennessee or California. So if you want to argue jurisdiction you have to do it in the court where the certified copy of decree of divorce was entered.

> [COUNSEL] The court in Manila has previously ruled that that decree was invalid because they lacked the jurisdiction—

> THE COURT: You mean another court?

> [COUNSEL]: No, the court where the annulment action has ruled that the Muslim decree —

> THE COURT: But, what I'm saying is those are two different courts.

[COUNSEL]: That is correct.

THE COURT: So, what I'm saying is I'm not convinced by what the court for the annulment said, because I have a certified copy that says this man is entitled to custody.

[COUNSEL]: Your Honor —

THE COURT: I don't think one court — in other words, a court in Connecticut can't rule this court doesn't have jurisdiction.

[COUNSEL]: And, that is precisely the issue here. I'm asking the court today to make a determination that one decree isn't any more valid than the action that is ongoing. The Philippines Court of Appeals has ruled it was not a valid action. Mr. Noordin here brought a motion to set aside the annulment on the basis of the decree entered by the Muslim court. That motion was denied. So, he brought a motion for reconsideration, and that was denied. And, it was because of the fact they did not have jurisdiction.

I've had four hours of preparation and I don't have all the documents. I can get them from the Philippines, but not in that short period of time, so I can show the court what the status of this case is.

When counsel handed the court a copy of the Regional Court order denying Mr. Noordin's motion for dismissal, the court stated:

THE COURT: Well, this [the copy of the Pasig City Order] is not certified or anything. This is just a piece of paper.

[COUNSEL]: And, all I'm asking for is the opportunity to get the certified copies of the doc[u]ments here so I can prepare this matter. I have had three hours notice in which to prepare for this hearing.

The Court denied counsel's repeated requests to continue the hearing.

The trial court called Ms. Abdulla to the stand and questioned her. At one point during the questioning, Ms. Abdulla asked the judge, "Are you mad at me, your honor?" The judge responded, "I don't like what you did. You

took his son with the intent of never telling him where he was. We don't like that as judges."

At the conclusion of the hearing, the court gave full faith and credit to the Muslim Shari'a Court order and granted custody of R. to Mr. Noordin, with reasonable visitation to Ms. Abdulla. The court also authorized Mr. Noordin to take R. with him to Brunei the following Friday.

## VI

### APPEAL

Ms. Abdulla obtained an emergency stay from the Court of Appeals, Division II, and retains custody of R. pending the outcome of this appeal.

On appeal, Ms. Abdulla contends that (1) the trial court erred in denying her request for a continuance to challenge the jurisdiction of the Muslim Shari'a Court; and (2) the trial court erred when it failed to apply the best interest of the child standard. Ms. Abdulla also requests that Judge Aubrey be disqualified from hearing the case on remand and that she be awarded attorney fees.

Mr. Noordin argues that Ms. Abdulla is precluded from contesting the validity of the Muslim Shari'a order because she recognized the Shari'a Court divorce and has since remarried. Mr. Noordin also requests attorney fees.

## ANALYSIS

### I

#### HABEAS CORPUS PROCEEDINGS

RCW 7.36.020 provides that:

Writs of habeas corpus shall be granted in favor of parents, guardians, limited guardians where appropriate, spouses, and next of kin, and to enforce the rights, and for the protection of infants and incompetent or disabled persons within the meaning of RCW 11.88.010; and the proceedings shall in all cases conform to the provisions of this chapter.

The person bringing an action in habeas corpus must be able to show a preexisting legal right to custody. Where one parent seeks custody of a minor child from the other parent by writ of habeas corpus, in order to warrant issuance of writ and hearing thereon, the writ-seeking parent must make a prima facie showing of legal right to custody of the child, paramount to the right of the other parent. *Schreifels v. Schreifels*, 47 Wn.2d 409, 414, 287 P.2d 1001 (1955). Accordingly, the party seeking custody by way of habeas corpus proceeding must affirmatively show that he is entitled to custody of the child.[8] Ms. Abdulla attempted to show that Mr. Noordin had no legal right to custody by virtue of the Muslim court order, but the trial court would neither honor her uncertified copy of the Regional Court order showing that the Shari'a Court lacked jurisdiction nor grant her a short continuance to obtain a certified copy. The record before us indicates that Mr. Noordin's claimed right to custody was questionable at best. His request for a writ should have been denied.

### A. Enforcement of Foreign Custody Decree

■ Article IV, section 1 of the United States Constitution provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

---

[8]No recent Washington cases have discussed use of habeas corpus proceedings to obtain custody of children. It is not clear whether in Washington the court may proceed with a custody determination in a habeas proceeding, as apparently allowed in some states. *See May v. Anderson*, 345 U.S. 528, 532, 73 S. Ct. 840, 97 L. Ed. 1221 (1953), noting

> the procedure in states where a court, upon securing the presence before it of the parents and children in response to a writ of habeas corpus, may proceed to determine the future custody of the children. *See e.g., Halvey v. Halvey* 330 U.S. 610[, 67 S. Ct. 903, 91 L. Ed. 1133] (New York Procedure) [1947] . . . .

*May*, 345 U.S. at 532 n.4.

American courts extend "full faith and credit" only to sister states, not to foreign jurisdictions.[9] The Muslim Shari'a Court of the Philippines is not a sister state of the State of Washington; Washington courts therefore do not extend full faith and credit to that court's judgments.

■■ An American court will enforce a foreign judgment in the United States only if convinced that the foreign court had jurisdiction to act. RESTATEMENT (SECOND) OF CONFLICT OF LAW, § 98 cmt. c, § 92, § 104 (1971). A party may challenge enforcement of a foreign order by raising any defense to the validity of the order which would be cognizable in the foreign jurisdiction. *State ex rel Eaglin v. Vestal*, 43 Wn. App. 663, 719 P.2d 163 (1986). *See generally* RCW 26.21.530; *see also Wampler v. Wampler*, 25 Wn.2d 258, 170 P.2d 316 (1946); RESTATEMENT (SECOND) OF CONFLICT OF LAW, § 112-15 (1971). Accordingly, when a court is called upon to enforce the judgment of a foreign court, the opposing party must be given an opportunity to show the foreign judgment would not be entitled to cognition in the foreign state itself. *Eaglin*, 43 Wn. App. 663; *see also In re Estate of Wagner* 50 Wn. App. 162, 748 P.2d 639 (1987).

## B. Trial Court Discretion

■■ Here, the trial court decided to enforce the Muslim Shari'a Court order without affording Ms. Abdulla a meaningful opportunity to contest the validity of that order. Ms. Abdulla made a credible offer of proof that the Muslim Shari'a order would not have been enforceable in the Philippines, and therefore was not entitled to recognition in this state. In addition, Ms. Abdulla had less than one working day to respond to Mr. Noordin's pleadings; in fact, her lawyer had only four hours. At the very least, if the trial court would not honor the noncertified copies, it should have given Ms. Abdulla an opportunity to obtain

---

[9]"No such right, privilege or immunity, however, is conferred by the Constitution . . . in respect to the judgments of foreign states or nations . . . ." *Aetna Life Ins. Co. v Tremblay*, 223 U.S. 185, 190, 32 S. Ct. 309, 56 L. Ed. 398 (1912).

certified copies of the Regional Court orders, which cast doubt on the validity of the Muslim Shari'a Court's jurisdiction.

## II

### CONTINUANCE

We review the trial court's denial of a motion for a continuance for abuse of discretion. *Port of Seattle v. Equitable Capital Group, Inc.*, 127 Wn.2d 202, 898 P.2d 275 (1995).

> Whether this discretion is based on untenable grounds, or is manifestly unreasonable, or is arbitrarily exercised, depends upon the comparative and compelling public or private interests of those affected by the order or decision and the comparative weight of the reasons for and against the decision one way or the other.

*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

This case involves enforcement of a foreign custody decree, entered by a court which, according to another foreign court, lacked jurisdiction. The trial court abused its discretion in denying a continuance to Ms. Abdulla, who, with her attorney, had appeared on very short notice. At the very least the trial court should have allowed the parties reasonable time to prepare for a full hearing on the enforceability of the foreign Shari'a Court custody order, which the trial court initially questioned because that action was filed after Ms. Abdulla's annulment petition in the Regional Court. Moreover, the trial court asked for copies of certified court orders. It appears to have been swayed by Mr. Noordin's certified court order from the Shari'a Court but refused to accord Ms. Abdulla's attorney an equal opportunity to obtain a certified copy of the Regional Court's contrary order.

Furthermore, the Regional Court's ruling that the Shari'a Court lacked jurisdiction appears supported by

these undisputed facts: (1) The couple's son had never resided in the jurisdiction of the Shari'a Court or appeared before that court; and (2) he was born out-of-wedlock, rendering Mr. Noordin's paternity questionable, if not nonexistent, under Muslim law.[10] Ms. Abdulla also raised the issue of whether the Shari'a Court would have extended to her due process in a divorce by talaq,[11] even if that court had had jurisdiction over her and her son.

Accordingly, we reverse the trial court's habeas corpus grant of custody of R. to Mr. Noordin and remand for further proceedings consistent with this opinion. If on remand Ms. Abdulla can show that the Muslim Shari'a Court did not have jurisdiction under the laws of the Philippines, the court must find that order unenforceable.

## III

### THE BEST INTEREST STANDARD

██ ██ The proceeding below was for the limited purpose of determining whether to grant Mr. Noordin's petition for a writ of habeas corpus. Even if Mr. Noordin can prove on remand that the Muslim Shari'a Court order is valid

---

[10]*Presidential Decree No. 1083,* Ch. 3, Tit. III, Art. 58-59 states:

Legitimacy, how established. - Legitimacy of filiation is established by evidence of valid marriage between the father and mother at the time of the conception of the child.

Legitimate children. - (1) Children conceived in lawful wedlock shall be presumed to be legitimate. Whoever claims illegitimacy of or impugns such filiation must prove his allegation.

(2) Children born after six months following the consummation of marriage or with [sic] two years after the dissolution of the marriage shall be presumed to be legitimate. Against this presumption no evidence shall be admitted other than that of the physical impossibility of access between the parents at or about the time of the conception of the child.

[11]*Presidential Decree No. 1083*, Ch. 3, Tit. 1, Art. 46 states:

Divorce by tala~g. (1) A divorce by tala~g may be effected the husband in a single repudiation of his wife during her non- menstrual period (tuhr) within which he has totally abstained from carnal relation with her. Any number of repudiations made during one tuhr shall constitute only one repudiation and shall become irrevocable after the expiration of the prescribed 'idda.

under Philippine law, the court below may need to determine whether, in light of the substantive law and procedure employed by the Muslim Shari'a Court, the Shari'a Court order is enforceable in the State of Washington.

When determining whether to enforce a foreign custody decree, the courts must abide by general principles of comity[12] and the Uniform Child Custody Jurisdiction Act (UCCJA), codified at RCW 26.27.010 to 26.27.910. The UCCJA has been adopted with minor variations in all 50 states and the District of Columbia. *See* UNIFORM CHILD CUSTODY JURISDICTION ACT, 9 U.L.A. 115-16 (1988). The UCCJA is the jurisdictional law that governs both interstate and, to some extent, international child custody disputes. The UCCJA mandates enforcement of valid custody decrees rendered in other states.

RCW 26.27.130 provides:

**Recognition of out-of-state custody decrees.** The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those in this chapter.

The UCCJA applies to international custody cases by virtue of RCW 26.27.230, which states:

**International application.** The general policies of this chapter extend to the international area. The provisions of this chapter relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody rendered by appropriate authorities of other nations

---

[12]Usually, the court must also consider treaties such as the Hague Convention. However, since the Philippines is not a signatory to that treaty, it does not apply here.

if reasonable notice and opportunity to be heard were given to all affected persons.

RCW 26.27.900 provides that the UCCJA shall be construed in conjunction with chapter 26.09 RCW,[13] which controls in the event of irreconcilable conflict. The plain language of RCW 26.27.230, which states that the foreign legal institutions must be similar in nature, also supports the conclusion that the trial court may consider the substantive law of the foreign court when determining whether to enforce a foreign custody decree.

In *In re Marriage of Ieronimakis*, 66 Wn. App. 83, 831 P.2d 172 (1992), Division One of this court held that Washington courts should give effect to custody decrees of foreign nations in the same manner they would to sister states. But Washington courts presented with foreign custody judgments should consider our strong public policy favoring the best interests of the child.[14] *See, e.g., Al-Fassi v. Al-Fassi*, 433 So. 2d 664 (Fla. Dist. Ct. App. 1983). In *Ieronimakis,* Division One noted that the foreign court involved (Greece) had given its assurances that custody decisions were based on the best interests of the child.

The Maryland courts have formulated the following test for determining whether to enforce foreign custody decrees: An order is presumed to be correct; this presumption shifts to the party contesting the order, who has the burden of proving by a preponderance of the evidence that (1) the foreign court did not apply the "best interest of the child" standard, or that (2) in making its decision, the foreign court applied a rule of law or evidence or procedure so contrary to public policy as to undermine confidence in the outcome of the trial. *Malik v. Malik*, 99 Md. App. 521, 638 A.2d 1184 (1993).

Based on this analysis and RCW 26.27.230, even if the

---

[13]The best interest of the child standard is codified at RCW 26.09.002 and 26.09.260.

[14]*See also* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 90 (1971): "No action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum."

Shari'a Court had jurisdiction to enter the custody decree, Ms. Abdulla is entitled to an opportunity to prove that the Shari'a Court proceedings were conducted in a manner contrary to Washington state law and public policy.

## IV

### REMARRIAGE OF MS. ABDULLA

Jurisdiction cannot be conferred by consent of the parties. *See Wampler*, 25 Wn.2d at 267. The fact that Ms. Abdulla has remarried does not preclude her contest of the Shari'a Court's jurisdiction. Mr. Noordin's argument, that Ms. Abdulla is estopped from attacking the jurisdiction of the Muslim Shari'a Court,[15] is without merit.

Moreover, even if Ms. Abdulla were somehow estopped from challenging the Shari'a Court's divorce, such estoppel would have no bearing on the question of the Shari'a Court's jurisdiction to determine custody of R., especially where, under the facts and laws before this court, Mr. Noordin does not appear to meet the Muslim law requisites for establishing paternity.[16]

## V

### BIAS

Ms. Abdulla seeks disqualification of Judge Aubrey on remand. In considering this argument we assume no actual bias. Nonetheless justice must satisfy the appearance of impartiality. *State v. Romano*, 34 Wn. App. 567, 662 P.2d 406 (1983); *Brister v. Council of City of Tacoma*, 27 Wn. App. 474, 619 P.2d 982 (1980); *Chicago, Milwaukee, St. Paul & Pac. R.R. v. Human Rights Comm'n*, 87 Wn.2d 802, 557 P.2d 307 (1976) (judiciary should avoid even mere suspicion of irregularity, or appearance of bias or prejudice.)

---

[15]It appears that under Muslim talaq, it would have been futile for Ms. Abdulla to protest her husband's repudiation and request for divorce, which apparently *is* granted to the husband automatically upon his unilateral repudiation of his wife (*see* note 3).

[16]*See* notes 2, 9.

Here, Ms. Abdulla spontaneously responded to the trial court's questioning of her with this question, "Are you mad at me, your honor?" To which the judge replied, "I don't like what you did . . . . We don't like that as judges." Based on this dialogue, coupled with the trial court's denial of Ms. Abdulla's requested continuance, we remand for a hearing before a different judge to promote the appearance of fairness.

## VI

### ATTORNEY FEES

Attorney fees may be awarded in a civil case when authorized by statute or upon a recognized equitable ground. *Woodcraft Constr., Inc. v. Hamilton*, 56 Wn. App. 885, 887, 786 P.2d 307 (1990) (citing *Clark v. Horse Racing Comm'n*, 106 Wn.2d 84, 92, 720 P.2d 831 (1986)). Ms. Abdulla cites to no authority in support of her proposition that she is entitled to attorney fees. Accordingly, we deny her request.

Mr. Noordin requests attorney fees pursuant to RCW 26.27.150(2), which provides that "[a] person violating a custody decree of another state which makes it necessary to enforce the decree in this state may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody . . . ." But Mr. Noordin has not shown that Ms. Abdulla violated a *valid* custody decree of "another state." Moreover, Ms. Abdulla also apparently has a temporary custody decree issued by the Philippine Regional Court. Mr. Noordin has failed to demonstrate that he is entitled to attorney fees. We therefore deny his request.

## CONCLUSION

For the foregoing reasons, we reverse and remand for further proceedings before a different trial court judge, consistent with this opinion.

HOUGHTON, C.J., and SEINFELD, J., concur.

After modification, further reconsideration denied January 16, 1998.