IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| CSILLA MUHL, | No.  46602-3-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| DAVIES PEARSON, P.C., | |
| Respondent. | |

BJORGEN, J. — The trial court dismissed Csilla Muhl's wrongful termination and retaliation claims against Davies Pearson P.C. on summary judgment.  Muhl appeals, claiming that the trial court erred by (1) striking her expert witness without performing the analysis required by *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.3d 1036 (1997), (2) dismissing her claims when material issues of fact remained about each, and (3) violating the appearance of fairness doctrine, necessitating the assignment of this case to a different superior court department on remand.

We hold that (1) the trial court erred by striking the report of Muhl's expert without complying with *Burnet*, (2) material issues of fact remain about Muhl's wrongful termination and retaliation claims, and (3) the trial court did not violate the appearance of fairness doctrine.

Consequently, we reverse both the order striking the report of Muhl's expert and the order of summary judgment, and we remand this matter for further proceedings consistent with this opinion.

FACTS

Muhl began working as an attorney for Davies Pearson in 1996. She left the firm in 1997, but returned in 2006 in the capacity of a "Contract Partner" after Davies Pearson recruited her to work in its family law group.

In October 2010, Muhl moved to continue a client's matter in trial court, referred to as the "K" trial,[1] to allow her to obtain necessary discovery. When the trial court denied the motion, Muhl had what Susan Caulkins, another Davies Pearson attorney, would later call a "meltdown" in front of "K" and some of the firm's staff. Clerk's Papers (CP) at 61. The client, upset by Muhl's loss of composure, initially demanded that another Davies Pearson attorney handle the case, although she later withdrew that demand.

When the "K" matter later went to trial, Muhl asked her expert witness a question that the trial court viewed as an attempt to circumvent a pretrial order. The trial court wrote Muhl a letter expressing its concerns and requesting that she address them. Muhl told her firm mentor, attorney Ron Coleman, about the letter and asked for his help in drafting her response. Muhl responded to the trial court by offering a legitimate reason for asking the expert witness the question; the trial court accepted her explanation and stated that it considered the matter closed. Muhl informed Coleman of this, and he replied that everything "look[ed] good." CP at 348.

Muhl's work in the "K" trial "helped the client achieve a very favorable outcome." CP at 313. Despite this result, Caulkins wrote a detailed memo critiquing Muhl's performance in the

---

[1] The use of the client's last initial was intended to protect her confidentiality.

case and gave the memo to Muhl. Muhl, however, disregarded the memo as criticism from a peer, because Caulkins had no supervisory authority over her.

In early 2011, Davies Pearson hired attorney Mark Nelson. The firm's shareholders believed that its family law group needed a male attorney, and the lone male attorney working in this group had just left it. Muhl contended that after the firm hired Nelson she received fewer intra-firm referrals, which were critical to her practice.

Nelson's hiring caused Muhl to question the treatment of female employees at Davies Pearson. In November 2011, Muhl met with Coleman and challenged the firm's treatment of its female attorneys. Muhl discussed firm diversity and leadership and noted that Davies Pearson had "[o]nly 1 woman [s]hareholder out of 11 total[] [and] 4 female attorneys [out of] 20 total." CP at 339. From this, Muhl inferred that "[f]emale attorneys do not appear to be recognized, promoted or retained" and asked Coleman, "[d]oes the firm have any interest in having female presence/partners?" CP at 339. According to Muhl, Coleman later indirectly answered this question by telling her that most of the female associates at the firm, including Muhl herself, were not on track to become shareholders.

Muhl did not raise concerns about sexual discrimination at the firm with any other shareholder. Coleman never discussed the substance of his November 2011 meeting with Muhl with any of the other shareholders.

In September 2012, one of Muhl's clients told her at the last minute that he did not want to pay her to appear and represent him at a contempt hearing. Muhl, feeling bound by the rules of professional conduct, acceded to the client's wishes and did not appear. Given the timing of the client's directive, Muhl did not file a notice of withdrawal until after the hearing. Caulkins discovered the hearing on the day it was scheduled during a routine check of the court's docket.

Knowing that Muhl was not working, Caulkins went to the hearing and appeared on behalf of the client. Caulkins's appearance on the client's behalf "did not make any difference to the outcome" and the client expressed no dissatisfaction with Muhl's failure to appear. CP at 314.

Caulkins complained about the incident to Tomlinson and Coleman, and Davies Pearson's Board of Directors eventually recommended that the firm terminate Muhl's employment. Seven of Davies Pearson's shareholders, Coleman included, voted to accept that recommendation. After the vote, Muhl was given a choice: she could resign or Davies Pearson would terminate her employment. Muhl chose termination, telling the firm that she "wanted to be honest about this and not sugarcoat anything." CP at 560. Davies Pearson granted Muhl's request, ending her employment at the end of November 2012.

Muhl then filed suit against Davies Pearson, alleging, among other matters, that her termination resulted from sexual discrimination and retaliation for opposing sexual discrimination, both violations of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. Davies Pearson denied all wrongdoing.

The trial court initially ordered the disclosure of the parties' witnesses by late December 2013. Muhl later discovered a book on gender discrimination written by Dr. Rosalind Barnett and retained her as an expert. Six months after the witness disclosure deadline, Muhl gave Davies Pearson a supplemental witness list that included Barnett's name and moved to extend the discovery deadline. The court granted that request, extending the deadline until July 25, 2013. On July 24, Muhl produced Barnett's report, which opined that Muhl's termination was the result of gender inequities and gender discrimination at Davies Pearson.

Davies Pearson moved to strike Barnett's report for a number of reasons, including a failure to comply with the local rules, specifically Pierce County Local Rule 26 governing

4

discovery. Muhl contended the trial court should deny the motion to strike Barnett's report, because she had "disclosed the expert's identity at or very near the time it became known." CP at 637. She argued that her disclosure of Barnett as soon as possible foreclosed a finding of willfulness under *Burnet* and that lesser sanctions would vindicate the purposes of discovery. The trial court determined that Muhl had hired Barnett "very, very, very late in the game," and ordered that "[t]he expert witness report of Dr. Rosalind Barnett is stricken." Verbatim Report of Proceedings (VRP) (Aug. 8, 2013) at 7-8; CP at 664. When Muhl's attorney raised the necessity of analyzing the *Burnet* factors on the record and asked about a lesser sanction, the trial court stated, "[T]here is no lesser sanction," because it perceived Davies Pearson would lack sufficient time to obtain its own expert to rebut Barnett's testimony.

Davies Pearson also moved for summary judgment on Muhl's claims. The firm contended that Muhl could not show that her termination was motivated by discriminatory or retaliatory animus and that it had permissible reasons for the termination. Muhl opposed summary judgment on the wrongful termination claim by contending that her employment record, which contained satisfactory to favorable reviews and which had no document that would have served as a precursor to termination, allowed the inference that Davies Pearson's articulated reasons for replacing her with Nelson, a male, were pretextual. Muhl opposed summary judgment on the retaliation claim by arguing that she had proven a prima facie case of retaliation, which precluded summary judgment.

The trial court held that Muhl had failed to show a prima facie case of wrongful termination and determined that no reasonable person could conclude that Davies Pearson's articulated reasons for Muhl's termination were pretextual, disposing of both her wrongful termination and retaliation claims.

Muhl appeals the order granting Davies Pearson's motion to exclude Barnett's report and the order granting its motion for summary judgment.

ANALYSIS

I. EXCLUSION OF BARNETT'S REPORT

Muhl first argues that the trial court abused its discretion by striking Barnett's report without first finding that her failure to timely disclose Barnett as a witness (1) was willful and (2) incapable of remedy with a lesser sanction. Davies Pearson responds that the trial court properly excluded Barnett's report because (1) the discovery sanction is moot, (2) the trial court properly concluded that lesser sanctions would not have served the purposes of the discovery rule, and (3) Barnett's declaration was inadmissible under a number of evidence rules.

The civil rules allow the trial court to impose sanctions to enforce its discovery orders. CR 37. We review the trial court's imposition of discovery sanctions for an abuse of discretion. *Blair v. TA-Seattle East No. 176*, 171 Wn.2d 342, 348, 254 P.3d 797 (2011).

The trial court's discretion in imposing discovery sanctions "is cabined" by *Burnet*, 131 Wn.2d 484, and its progeny. *Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013), *as corrected* (Feb. 5, 2014). Those cases require the trial court to consider three factors before imposing "'one of the harsher remedies allowable under CR 37(b).'" *Burnet*, 131 Wn.2d at 494 (quoting *Snedigar v. Hodderson*, 53 Wn. App. 476, 487, 768 P.2d 1 (1989)). These factors include (1) whether the failure to comply with a discovery order was willful or deliberate, (2) whether the discovery violation substantially prejudiced the other party, and (3) whether lesser sanctions would vindicate the purposes of discovery. *See Burnet*, 131 Wn.2d at 494. The trial court must make specific findings on each of these factors to comply with *Burnet*, *In re Dependency of M.P.*, 185 Wn. App. 108, 117, 340 P.3d 908 (2014) (citing *Teter v. Deck*, 174

Wn.2d 207, 216-17, 274 P.3d 336 (2012)), although the findings need not be made in writing. *Teter*, 174 Wn.2d at 217.

Davies Pearson argues that we should not even reach the merits of Muhl's claim because it is moot, contending that Muhl appeals the trial court's exclusion of Barnett at trial, not on summary judgment. We disagree. The order Muhl appeals struck Barnett's opinion itself and there is nothing about Muhl's assignment of error that limits her appeal to the exclusion of Barnett's testimony at trial. Given the record and that Muhl is appealing the dismissal of her claims on summary judgment, any natural reading of Muhl's assignment of error is that it is aimed at the exclusion of Barnett's opinion on summary judgment and at trial.

Reaching the merits of Muhl's claim, we hold that the trial court abused its discretion by granting Davies Pearson's motion to strike Barnett's opinion for two reasons. First, as Muhl argues, the trial court made no specific finding of willfulness, focusing instead on the fact that Muhl had failed to timely disclose Barnett. A failure to comply with a discovery order is not necessarily a willful violation. *Blair*, 171 Wn.2d at 350 n.3; *see Jones*, 179 Wn.2d at 343. Accordingly, the trial court failed to make the necessary findings on the first *Burnet* factor.

Second, the trial court's finding about the inadequacy of lesser sanctions focused on the time remaining between the disclosure of Barnett and the discovery cut-off and trial. But the trial court did not consider whether extending the discovery cut-off or continuing trial would have prejudiced Davies Pearson. The failure to consider those alternative sanctions constitutes inadequate consideration as to "whether a lesser sanction would suffice" under *Burnet*'s third factor. *In re M.P.*, 185 Wn. App. at 118.

Davies Pearson urges us to affirm the exclusion of Barnett's opinion on alternative grounds, specifically its "inadequate foundation, the speculation and conjecture upon which the

opinion is based, and the fact that the opinion is irrelevant as to a species of intentional tort in so far as it describes an unconscious process." Br. of Resp't at 41. The above quotation is the sum total of Davies Pearson's argument on the issue, which appears to be an attempt to incorporate its trial briefing into its appellate brief. We generally decline to address issues given passing treatment, *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 416, 120 P.3d 56 (2005), and specifically forbid parties from arguing issues by incorporating trial briefs. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1988). We decline Davies Pearson's invitation to affirm on alternative grounds.

Because the trial court failed to comply with the holdings of *Burnet* and its progeny, we reverse the order striking Barnett's report.

## II. SUMMARY JUDGMENT

Muhl next contends that the trial court erred by granting Davies Pearson summary judgment, claiming that material issues of fact remain on (1) whether she established prima facie cases of wrongful termination and retaliation and (2) whether the legitimate reasons Davies Pearson offered to justify her termination were pretextual. Davies Pearson contends that no material issues of fact exist as to either Muhl's prima facie cases or pretext on its part and that it was entitled to judgment as a matter of law. We agree with Muhl.

A.      Standard of Review

We review a trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). We view the evidence, and all inferences reasonably allowed by the evidence, in the light most favorable to the nonmoving party when reviewing an order of summary judgment. *Lakey*, 176 Wn.2d at 922. Summary judgment is appropriate where no genuine issue of material

8

fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

B.      The *McDonnell Douglas* Framework

Washington applies the burden shifting analysis prescribed by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to statutory discrimination claims where the plaintiff lacks "direct evidence of discriminatory animus." *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180, 23 P.3d 440 (2001) (emphasis omitted), *overruled on other grounds*, *McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006). Wrongful termination and retaliation claims brought under the WLAD are statutory discrimination claims. RCW 49.60.180(2), .210(1); *Domingo v. Boeing Emps. Credit Union*, 124 Wn. App. 71, 80, 98 P.3d 1222 (2004) (sex discrimination); *Short v. Battle Ground Sch. Dist.*, 169 Wn. App. 188, 205, 279 P.3d 902 (2012) (retaliation), *overruled on other grounds*, *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 325 P.3d 193 (2014) (retaliation). Muhl presented no direct evidence of discrimination or retaliation. Consequently, the *McDonnell Douglas* framework applies to her claims.

Under *McDonnell Douglas*, the plaintiff bears the initial burden of production in making out a prima facie case of wrongful termination or retaliation. *Hill*, 144 Wn.2d at 181; *Domingo*, 124 Wn. App. at 78; *Short*, 169 Wn. App. at 204. If the plaintiff makes this showing, a rebuttable presumption of discrimination or retaliation arises. *Hill*, 144 Wn.2d at 181 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)); *Domingo*, 124 Wn. App. at 77; *Short*, 169 Wn. App. at 204. If the plaintiff fails to make

out a prima facie case, the defendant is entitled to judgment as a matter of law. *Hill*, 144 Wn.2d at 181; *accord Domingo*, 124 Wn. App. at 77-78; *Short*, 169 Wn. App. at 204.

If the plaintiff discharges his or her burden of making out a prima facie case of discrimination or retaliation, "the employer must articulate a legitimate, nondiscriminatory reason for termination . . . [t]o go forward." *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 363-64, 753 P.2d 517 (1988); *accord Domingo*, 124 Wn. App. at 77; *Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 743, 332 P.3d 1006 (2014), *review denied*, 182 Wn.2d 1006 (2015). The employer bears the burden of production, not of persuasion, in offering a legitimate reason for the termination. *Hill*, 144 Wn.2d at 181. If the employer fails to discharge its burden of production, the plaintiff is entitled to judgment as a matter of law "because no issue of fact remains in the case." *Hill*, 144 Wn.2d at 181-82 (quoting *Kastanis v. Educ. Emps. Credit Union*, 122 Wn.2d 483, 490, 859 P.2d 26, 865 P.2d 507 (1993)).

If, however, the employer carries its burden, it successfully rebuts the presumption created by the plaintiff's prima facie case, *Hill*, 144 Wn.2d at 182, and the plaintiff bears the burden of producing evidence that discrimination or retaliation was a "substantial factor" in the termination. *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446-47, 334 P.3d 541 (2014); *Domingo*, 124 Wn. App. at 77. The employee may carry this burden by offering evidence that creates a material issue of fact either that the employer's reasons were pretextual or that, although the stated reasons were legitimate, discrimination or retaliation was nonetheless a substantial factor motivating the discharge. *Scrivener*, 181 Wn.2d at 446-47; *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 73, 821 P.2d 18 (1991). Where the employee makes out a prima facie case and offers evidence of pretext "sufficient to disbelieve the employer's proffered explanation," a fact finder generally must determine the "true reason for the adverse employment

action . . . in the context of a full trial." *Hill*, 144 Wn.2d at 185. The exception to this general rule occurs where, despite the evidence of a prima facie case and pretext offered by the employee, no rational trier of fact could conclude that the action was discriminatory or retaliatory. *Hill*, 144 Wn.2d at 188-89 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

C.      Muhl's Wrongful Termination Claim

Muhl contends that she made out a prima facie case of wrongful termination and produced evidence from which a jury could refuse to credit Davies Pearson's justifications for her termination, making summary judgment inappropriate. Davies Pearson contends that Muhl failed to show a prima facie case or pretext. Muhl is correct.

1. The Prima Facie Case

RCW 49.60.180(2) proscribes the discharge of any employee on the basis of sex. To establish a wrongful discharge claim under RCW 49.60.180(2), the plaintiff must show that he or she "(1) is a member of a protected class; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a person . . . outside the protected group." *Domingo*, 124 Wn. App. at 80. Here, the parties dispute only the last two elements.

a. Satisfactory Work

Muhl contends that she created a material issue of fact as to whether she was performing satisfactorily. She notes that (1) she received no written notice of deficient performance in the time leading up to her termination, (2) her performance reviews were satisfactory to good in the two years before her termination, and (3) she received a performance bonus each of the three years before her termination. Davies Pearson contends that Muhl was not performing satisfactorily given three "significant" incidents: her loss of composure in front of "K," her

question that triggered the trial court's letter in the "K" trial, and her failure to appear on behalf of her client at the contempt hearing.

In the light most favorable to Muhl, the record shows the following about her performance: (1) she received satisfactory or better performance reviews, (2) Davies Pearson never required Muhl to carry out a performance improvement plan or imposed performance related discipline on her, despite apparently using these devices, (3) she qualified for performance bonuses in 2009, 2010, and 2011, (4) the client involved in the October 20, 2010 incident where Muhl allegedly lost her composure allowed Muhl to try the case and Muhl obtained a satisfactory outcome for her, (5) the October 20, 2010 incident occurred more than two years before her termination, (6) she addressed the trial court's concerns in the "K" trial and the court accepted her explanations, (7) Coleman stated that the trial court's response to Muhl in that trial "look[ed] good," CP at 348, (8) the trial court's acceptance of Muhl's explanation occurred in July 2011, more than a year before her termination, (9) the client informed her that he did not want her to show up at the contempt hearing in September 2012, and (10) the client did not express any dissatisfaction with her failure to appear at the contempt hearing.

From this evidence, a reasonable fact finder could determine that Muhl was performing satisfactorily. Her employment record does not show any deficiencies, and she received performance bonuses in each of three years leading up to her firing. At least one of these bonuses appears to have come after two of the incidents that Davies Pearson used to justify Muhl's termination. Muhl made out the third element of a prima facie case of sex discrimination: that she was doing satisfactory work.

b. Replacement by a Person Outside the Protected Class

Muhl also contends that she created a material issue of fact as to whether she was replaced by a person outside the protected class because Nelson, a male, essentially took up her duties at the firm. Davies Pearson contends that Muhl fails to create a material issue of fact because Nelson was at the firm 18 months before her firing and did not replace her, citing *LeBlanc v. Great American Insurance Co.*, 6 F.3d 836, 846 (1st Cir. 1993).

In the light most favorable to Muhl, the record shows that Davies Pearson hired Nelson to put a male attorney in its family law group and that Nelson's hiring resulted in him receiving the work that used to go to Muhl. From this evidence, a reasonable fact finder could determine that Nelson replaced Muhl.

In addition, Davies Pearson's argument that Nelson did not replace Muhl because his hiring predated her firing runs aground on the policies and purposes of the WLAD. The WLAD "contains a sweeping policy statement strongly condemning many forms of discrimination . . . [and it] requires that '[it] be construed liberally for the accomplishment of the purposes thereof.'" *Allison v. Hous. Auth. of Seattle*, 118 Wn.2d 79, 85-86, 821 P.2d 34 (1991) (quoting RCW 49.60.020). Accepting Davies Pearson's argument as a matter of law would allow an employer to escape liability under the WLAD by acting with the slightest foresight and hiring the terminated employee's future replacement before actually terminating the employee. The ease with which this artifice would allow employers to thwart the WLAD is contrary to the legislature's intent. A jury should determine the factual question of whether Nelson replaced Muhl.

We also reject Davies Pearson's argument that Nelson did not replace Muhl because he merely received her duties in a reorganization after her termination. The firm's reliance on

*LeBlanc* for that proposition is mistaken. *LeBlanc*, and its forerunner, *Barnes v. GenCorp. Inc.*, 896 F.2d 1457 (6th Cir. 1990), are "reduction in [work] force" cases. *E.g.*, 6 F.3d at 845. A work force reduction "occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes*, 896 F.2d at 1465. The courts treat reduction in workforce terminations differently than other types of terminations for purposes of discrimination claims. *Barnes*, 896 F.2d at 1464-65. In reduction in workforce cases, when the employee's duties are shifted among the remaining employees, the employee is not considered "replaced." *Barnes*, 896 F.2d at 1465. "A person is replaced only when another employee hired or reassigned to perform the plaintiff's duties." *Barnes*, 896 F.2d at 1465. Davies Pearson has not, at any point, stated that it terminated Muhl's employment because of staffing considerations. Quite the contrary, it has repeatedly justified the termination on performance grounds. Having done so, and in light of Muhl's evidence that Nelson essentially replaced her, Davies Pearson cannot rely on *Barnes* and *LeBlanc* to nullify Muhl's showing of this element of her prima facie case.

2. Nondiscriminatory Reasons Justifying the Termination

Although not directly an issue here, Davies Pearson offered legitimate, nondiscriminatory reasons to justify Muhl's termination, resting her termination on three incidents: the emotional display in front of "K," the letter from the trial judge in the "K" trial, and the failure to appear at the contempt hearing. CP at 490-91. Davies Pearson met its burden of production under the second prong of *McDonnell Douglas*.

3. Pretext

Muhl contends that three elements create a genuine issue of material fact as to whether the reasons used by Davies Pearson to justify her termination were pretextual. We find at least two of them create material issues of fact and need not reach the remainder.

To show pretext, Muhl needed to create a genuine issue of material fact as to whether Davies Pearson's justifications for terminating her were "unworthy of belief." *See Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738, 904 P.2d 793 (1995); *Sellsted v. Wash. Mut. Sav. Bank*, 69 Wn. App. 852, 859-60, 851 P.2d 716 (1993), *overruled on other grounds*, *McKay v. Acord Custom Cabinetry*, 127 Wn.2d 302, 898 P.2d 284 (1995). To create such a material issue of fact, the employee "'must show, for example, that the reason has no basis in fact, it was not really a motivating factor for the decision, it lacks a temporal connection to the decision or was not a motivating factor in employment decisions for other employees in the same circumstances.'" *Scrivener*, 181 Wn.2d at 447-48 (quoting *Kuyper*, 79 Wn. App. at 738-39).

a. Muhl's Performance

As noted above, Muhl has made the showing necessary to establish a prima facie case of sex discrimination. Part of that showing is that she was performing in a satisfactory manner. Muhl's prima facie case thus created genuine issues of material fact on the first two elements of the *Scrivener* test set out above: whether the proffered justification has a basis in fact or was not really a motivating factor for the termination. *Scrivener*, 181 Wn.2d at 447-48. Evidence of a prima facie case can establish pretext. *See Sellsted*, 69 Wn. App. at 859-60 (citing *Burdine*, 450 U.S. at 255 n.10; *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985)). Muhl has raised a genuine issue of material fact as to whether Davies Pearson's assertion of unsatisfactory performance was pretextual.

b. References to Nelson's Sex in Hiring Him

Muhl's evidence regarding Davies Pearson's desire to have a male employee in its family law group also creates a genuine issue of material fact regarding pretext. *Sellsted*, 69 Wn. App. at 860 (citing *Burdine*, 450 U.S. at 255 n.10; *Thornbrough*, 760 F.2d at 640). Davies Pearson's shareholders testified that they wanted a male attorney in the family law group. Nelson continues to work there. Muhl does not. From these facts the jury could reasonably infer that Davies Pearson replaced Muhl with Nelson on the basis of sex and refused to credit its articulated reasons for the termination. *See Scrivener*, 181 Wn.2d at 447-48.

Davies Pearson contends that the statements about the need for a male attorney were "'stray' remarks . . . 'unrelated to the decisional process.'"[2] Br. of Resp't at 31-32 (quoting *Flynn v. Portland Gen. Elec. Co.*, 958 F.2d 377 (9th Cir. 1992)).[3] Assuming that the stray remarks doctrine has validity in Washington after the Supreme Court's decision in *Scrivener*, see 181 Wn.2d at 448, these are not stray remarks unrelated to the decisional process. Instead, they go directly to Davies Pearson's alleged reasons for terminating Muhl.

To summarize the analysis of the wrongful termination claim, Muhl satisfied her burden of producing evidence to create a prima facie case and that evidence raises a genuine issue of material fact as to whether Davies Pearson's proffered reasons for terminating Muhl were

---

[2] Davies Pearson also attempts to limit the remarks to Coleman, but Coleman stated that Davies Pearson's shareholders in general wanted a male in the family law group.

[3] We remind Davies Pearson that it cannot cite to unpublished cases such as *Flynn* without meeting certain requirements. *See* GR 14.2, RAP 10.4(h), and FRAP 32.1(a)(ii). This citation did not meet those requirements.

pretextual.[4] Summary judgment in Davies Pearson's favor on the wrongful termination claim was granted in error.

D.     The Retaliation Claim

Muhl contends that (1) she engaged in statutorily protected activity and (2) Davies Pearson knew of her activity, establishing a prima facie case of retaliation and making summary judgment inappropriate. Davies Pearson contends that (1) Muhl did not engage in statutorily protected activity and (2) her termination was too attenuated from any protected activity to give rise to an inference of retaliation. Muhl is correct.

1. The Prima Facie Case

RCW 49.60.210 proscribes retaliatory employment actions against those who have "opposed any practices forbidden by this chapter." RCW 49.60.180 forbids a number of practices, including discrimination in hiring based on sex, RCW 49.60.180(1), and "discriminat[ion] against any person in compensation or in other terms or conditions of employment because of . . . sex." RCW 49.60.180(3). To establish a prima facie case of retaliatory discharge, the plaintiff must show "(1) he or she engaged in statutorily protected activity; (2) an adverse employment action was taken; and (3) there was a causal link between the employee's activity and the employer's adverse action." *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005). The parties dispute the first and third elements.

---

[4] We do not suggest that making a prima facie case necessarily raises genuine issues of material fact about pretext.

a. Statutorily Protected Activity

The first element of a prima facie case for retaliation requires the plaintiff to show that he or she engaged in statutorily protected activity. The WLAD protects employees who "oppose[] employment practices forbidden by antidiscrimination law." *Alonso v. Qwest Commc'ns Co.*, 178 Wn. App. 734, 754, 315 P.3d 610 (2013). It is not necessary that the WLAD actually proscribe the employer's conduct; so long as the employee reasonably believes he or she is opposing discriminatory practices, the statute protects the employees conduct. *Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 743, 332 P.3d 1006 (2014).

In the light most favorable to Muhl, the record shows that in her meeting with Coleman she noted the dearth of female attorneys and shareholders at the firm, stated her belief that the dearth showed the firm's failure to "recognize[], promote[] or retain[]" female attorneys, and asked whether the firm was indifferent to the lack of gender diversity. CP at 339. From that evidence, a reasonable fact finder could determine that she opposed gender discrimination at Davies Pearson, which is statutorily protected activity. *Short*, 169 Wn. App. at 206 (citing *Estevez*, 129 Wn. App. at 798-99). Davies Pearson contends that Muhl simply "recite[d]" the firm's demographics at the meeting and this did not constitute a complaint. Br. of Resp't at 35. This argument, however, is based on an incomplete presentation of the record, omitting statements that appear to constitute complaints. Muhl established the first element of a prima facie case of retaliation.

b. Causal Connection

The third element of a prima facie case requires the employee to show a causal connection between the statutorily protected activity and an adverse employment action. An employee may create a rebuttable presumption of a causal connection, *Wilmot v. Kaiser*

*Aluminum & Chemical Corp.*, 118 Wn.2d 46, 69, 821 P.2d 18 (1991), by establishing that the employee participated in opposition activity, that the employer knew of the opposition activity, and that the employee was discharged. *Wilmot*, 118 Wn.2d at 69. That presumption, if unrebutted, precludes judgment as a matter of law. *Wilmot*, 118 Wn.2d at 69.

Davies Pearson argues that Muhl cannot show that "it" knew of her opposition activity, preventing the presumption of retaliation from arising. The firm argues that the record shows that none of the shareholders voting on Muhl's termination, save Coleman, knew of her complaints, precluding any showing of retaliatory intent by the firm. While true, the record also indicates that other shareholders voting on Muhl's termination relied on information from co-shareholders with knowledge of Muhl's actions. A reasonable inference from that evidence is that those shareholders relied on Coleman's representation of events given his status as Muhl's mentor, his familiarity with the issues leading to the termination vote, and his receipt of Muhl's complaints about sex discrimination. We have recognized that an employer may commit a retaliatory act where a person uses his or her influence over the employer's decision-making process to give effect to his or her animus. *Cf. City of Vancouver v. Pub. Emp't Relations Comm'n*, 180 Wn. App. 333, 351-52, 354, 325 P.3d 213 (2014). Genuine issues of material fact remain as to whether Coleman used his influence to cause Davies Pearson's shareholders to vote to terminate Muhl.

Davies Pearson argues that, if a presumption of causation existed, the delay between Muhl's complaints to Coleman in November 2011 and her termination in November 2012 rebuts it. Looking first to Washington law on the issue, our courts have acknowledged that temporal proximity between protected activity and termination can indicate retaliation. *Estevez*, 129 Wn.

App. at 799. The outer limits of this temporal proximity, however, remain an open question under state law.

Davies Pearson cites federal precedent holding that anything longer than eight months between the protected activity and the termination makes the adverse employment action too remote to allow an inference of causation. We decline to follow the holdings of those cases, which are simply persuasive, and instead adopt the reasoning used by the Ninth Circuit in *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) and its progeny.

In *Coszalter*, the court reasoned that "a specified time period cannot be a mechanically applied criterion. A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." 320 F.3d at 977-78. The court based this conclusion on the recognition that a person harboring a desire to retaliate against someone opposing protected activity might wait for time to pass to disguise their true motives. 320 F.3d at 977-78. To account for this, the court held that "[w]hether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in light of the timing and the surrounding circumstances." *Coszalter*, 320 F.3d at 978.

As discussed above, Muhl offered evidence from which a rational trier of fact could determine that her termination was pretextual. Given that evidence, a rational finder of fact could determine that the delay here was not too long to preclude an inference of causation. *See Coszalter*, 320 F.3d at 977-79. Genuine issues of material fact remain on whether a causal relation lies between Muhl's protected activity and her termination.

Davies Pearson further argues that no rational trier of fact could find that it retaliated against Muhl for her opposition to sex discrimination, since it gave her a bonus just after her

complaints to Coleman. Although a reasonable fact finder could determine that the bonus defeats Muhl's claim of retaliation, one could also reasonably find retaliation in spite of the bonus. A genuine issue of material fact remains on this issue as well.

Finally, Davies Pearson argues that there can be no presumption of a causal link between Muhl's protected activity and her termination, since Coleman participated in the decision to hire and fire her. Where the same decision maker hires and fires an employee in a short period of time, "there is a strong inference that he or she was not discharged" due to discriminatory or retaliatory animus. *Hill*, 144 Wn.2d at 189 (emphasis omitted). Here, however, the time between Muhl's hiring and firing was sufficiently long enough that retaliatory animus could enter the picture, making the *Hill* rule inapplicable.

2. Summary

Muhl met her burden of showing a prima facie case of retaliation. The manner in which she did so raised a rebuttable presumption of causation. Davies Pearson failed to rebut that presumption. Genuine issues of material fact remain on Muhl's retaliation claim, and summary judgment in Davies Pearson's favor on that claim was inappropriate. *Wilmot*, 118 Wn.2d at 69.

III. APPEARANCE OF FAIRNESS

Finally, Muhl contends that she did not receive a fair hearing on summary judgment and that the appearance of fairness doctrine requires us to remand her cause to a different department for further proceedings. Davies Pearson contends that the trial court did not violate the appearance of fairness doctrine, because it properly considered the relevant law and evidence. We agree with Davies Pearson.

Washington's "appearance of fairness doctrine seeks to ensure public confidence by preventing a biased or potentially interested judge from ruling on a case." *In re Marriage of*

*Meredith*, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009). We review appearance of fairness doctrine claims in two stages. *See State v. Dominguez*, 81 Wn. App. 325, 330, 914 P.2d 141 (1996). First, the party alleging bias "must support the claim with evidence of the trial court's actual or potential bias" sufficient to overcome this court's presumption that the trial court "perform[ed] its functions regularly and properly without bias or prejudice." *West v. Wash. Ass'n of County Officials*, 162 Wn. App. 120, 136-37, 252 P.3d 406 (2011). If the party makes that showing, we then review whether "a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing." *Meredith*, 148 Wn. App. at 903 (citing *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995)). If the appearance of fairness doctrine is violated, we may order that a cause be assigned to a different judge on remand. *E.g.*, *State v. A.W.*, 181 Wn. App. 400, 414, 326 P.3d 737 (2014).

Muhl fails to overcome the presumption that the trial court performed impartially. The record before this court shows, at best, that the trial court erred in applying the law.[5] An error in applying the law, however, is not evidence of judicial bias. *Bus. Servs. of Am. II, Inc. v. WaferTech LLC*, 159 Wn. App. 591, 600, 245 P.3d 257 (2011), *appeal filed*, 184 Wn. App. 1013 (2014). Muhl fails to show personal animus by the trial judge, *e.g.*, *In re Custody of R.*, 88 Wn. App. 746, 762-63, 947 P.2d 745 (1997), personal bias or a conflict of interest by the trial court, *e.g.*, *Tatham v. Rogers*, 170 Wn. App. 76, 103, 283 P.3d 583 (2012), or that the trial judge was

---

[5] Muhl claims that the trial court in this proceeding engaged in fact finding outside the record by speaking with the trial judge in the "K" proceeding about the letter described above and by determining that the trial judge was "outraged" based on that investigation. Such fact finding would violate the appearance of fairness doctrine. *State v. Madry*, 8 Wn. App. 61, 69-71, 504 P.2d 1156 (1972). Muhl's presentation of the record, however, appears incorrect. From the transcript, it appears that the trial court characterized the judge in the "K" proceeding as outraged based simply on having read the letter he wrote, which was in the record and which essentially accused Muhl of violating a pretrial order.

impermissibly exercising her authority, *e.g.*, *A.W.*, 181 Wn. App. at 411-12. The appearance of fairness doctrine was not violated, and remand to a different department is unnecessary.

IV. ATTORNEY FEES

Both parties request attorney fees.

RAP 18.1 allows fees on appeal if authorized by applicable law and the party requests fees in compliance with RAP 18.1(b). RCW 49.60.030(2) authorizes a prevailing plaintiff to recover attorney fees, including those on appeal. *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 786, 249 P.3d 1044 (2011). Should Muhl eventually triumph on her WLAD claims, the trial court must calculate and order an appropriate award of attorney fees. *Frisino*, 160 Wn. App. at 786.

Davies Pearson requests statutory costs and attorney fees under RAP 18.1 and RCW 4.84.030 and .080. RCW 4.84.030 allows statutory costs and attorney fees to a "prevailing party." A prevailing party under the provision "is the one who has an affirmative judgment rendered in his favor at the conclusion of the entire case." *Ennis v. Ring*, 56 Wn.2d 465, 473, 353 P.2d 950 (1959); *Stott v. Cervantes*, 23 Wn. App. 346, 348, 595 P.2d 563 (1979). Given our disposition of Muhl's claims, this case is not concluded. On remand the trial court must calculate and award statutory attorney fees and costs to Davies Pearson if it receives judgment in its favor at the conclusion of the case. *See* RCW 4.84.030, .080.

CONCLUSION

We reverse the order striking Barnett's report and the order granting Davies Pearson summary judgment on Muhl's wrongful termination and retaliation claims. We remand the

matter for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MELNICK, J.